## MELVIN DOUGLASS WILLIAMS v. STATE OF MARYLAND

[No. 287, September Term, 1968.]

512

*Decided April 15, 1969.*

*Leroy W. Carroll* (*Milton B. Allen* on the brief) for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, State's Attorney for Baltimore City,* and *James B. Dudley, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, Melvin Douglass Williams, was convicted under Indictment No. 2731 of possession of narcotics, under Indictment No. 2732 of possession of narcotics, and under Indictment No. 2733 of carrying a concealed weapon, in the Criminal Court of Baltimore by Judge Anselm Sodaro, sitting without a jury. He was sentenced to consecutive terms of five years, five years and two years, respectively, under the jurisdiction of the Department of Correction.

In this appeal, four questions are presented:

1. Whether there was sufficient evidence to convict under Indictment No. 2731?
2. Whether the appellant was deprived of his constitutional right to obtain review of the factual basis of the magistrate's determination of probable cause by State procedures allowing such a determination to be based on a policeman's unrecorded oral testimony?
3. Whether the search of the appellant's automobile violated the Fourth Amendment?
4. Whether there was sufficient evidence to convict under Indictment No. 2732?

Briefly, the facts of the case are that on March 8, 1967 federal narcotics agents, local police officers, and an informer made plans for a purchase of narcotics by the informer from the appellant. The sale was allegedly made later that day, and was witnessed by one of the agents. On March 31, 1967 a search warrant was obtained by agents although the application for the

warrant was not signed by the applicant, a local police officer. On April 12, 1967 an arrest warrant was obtained by the agents. During the afternoon of April 13, 1968 the appellant was arrested and narcotics were allegedly found in his pocket; the automobile which he was driving was searched and narcotics and a pistol were allegedly found.

I

With respect to the offense charged under Indictment No. 2731, Joseph Mordecai, a federal narcotics agent, testified that on March 8, 1967 he and Agents Lozowicki, Notel, Shaheen and Bland made plans to make a purchase of narcotics from the appellant. Pursuant to the plan, Agent Mordecai and an informant, who was not an agent, went to the Avenue Musical Bar in Baltimore, arriving there about 5:20 p.m. The informant made two telephone calls, and shortly thereafter the appellant entered and sat at the bar with the informant. Mordecai was sitting opposite them at the bar, which was rectangular. He saw money pass from the informant to the appellant and a white paper bag pass from appellant to the informant. He then saw the appellant exit by the front door and the informant exit by the side door. Agent Mordecai identified the appellant as the man whom he saw in the bar with the informant.

Agent Vincent Lozowicki testified that before the informant and Agent Mordecai went to the bar, he searched the informant and found no money and no narcotics on him. He then gave the informant $700 in cash. Agent Lozowicki stationed himself on the street in a position where he could see the front entrance of the Bar, and saw the appellant enter and then leave some five minutes later; he did not arrest the appellant at that time because he did not know whether the sale had been transacted. When the agents involved and the informant met at the agents' office a short time later, he again searched the informant and found neither money nor narcotics on him.

Agent George Notel testified that when the informant exited the side door of the Bar, he (Notel) pulled up to him in an automobile, which the informant entered. Between the time the informant exited the Bar and the time he entered the car approximately one minute elapsed; during that interim Agent

Notel did not see the appellant speak to anyone nor come in close proximity to anyone. Once inside the automobile the informant gave Notel a paper bag, inside of which were two glassine envelopes, each of which contained a white powder. Agent Mordecai came to the automobile and the informant left Notel and went with Mordecai. Later in the evening Notel initialed the paper bag and each of the glassine envelopes and placed them in the agents' office safe overnight. The following morning he delivered the envelopes to a United States Customs Chemist.

The Chemist's report, admitted without objection, indicated that the powder contained in the envelopes was heroin hydrochloride.

The appellant testified that he received two telephone calls from the informant on March 8, 1967 and that pursuant to them he went to the Avenue Musical Bar. He sat at the bar with the informant and the informant showed him three $10 bills, which the informant requested that he examine, and he did examine them. The informant then urged him to accompany him to the bathroom, which the appellant did. While in the bathroom the informant indicated that the $10 bills were counterfeit and that he could supply them to the appellant at $30 per $100 face value. The appellant refused the offer and left the bathroom. He then exited the Bar. The appellant testified that at no time was there any mention made of narcotics and that he handed the informant nothing except the three $10 bills which the informant had handed to him.

In non-jury trials the weight of the evidence and the credibility of the witnesses rest within the determination of the trial court. *Brown v. State,* 4 Md. App. 261, 268 (1968). The trial court, in performing its duty of judging the credibility of witnesses, may disbelieve the exculpatory statements made by the defendant. *Brown v. State, supra* at 269. This Court cannot reverse a judgment of the lower court unless it is shown that there was no legally sufficient evidence, or proper inferences therefrom, from which that court could find the accused guilty beyond a reasonable doubt. *Brown v. State, supra* at 269. From the facts of this case the trial court could have found beyond a reasonable doubt that the informant entered the Bar with

$700 but no narcotics and exited with narcotics but no money; that while in the Bar the informant passed the $700 to the appellant and the appellant passed a bag containing two envelopes of narcotics to the informant, and therefore that immediately prior to the sale the appellant had possession of the narcotics. We cannot say that the lower court was clearly erroneous in reaching this conclusion. Maryland Rule 1086.

## II

On March 31, 1967 Agents Mordecai and Notel made affidavits in support of an application for a search and seizure warrant made by Officer Daniel Davis of the Baltimore City Police Department. That application was not signed by the applicant, although the warrant was signed and issued by a municipal court judge. On April 12, 1967 Agent Lozowicki appeared before a different municipal court judge as the complainant seeking an arrest warrant. Lozowicki told the judge "more or less in substance what the affidavits were" when the search warrant was secured, and the arrest warrant was issued upon the sworn statement of the agent.

The appellant contends that issuance of an arrest warrant on the basis of complainant Lozowicki's unrecorded oral testimony violates the Fourth Amendment in that it effectively precludes review of the determination of probable cause for the issuance of the warrant.

As appellant concedes, the courts of this State have not required that probable cause for the issuance of an arrest warrant be established by recorded testimony. *Nadolski v. State,* 1 Md. App. 304, 308 (1967) ; *Scarlett v. State,* 201 Md. 310, 317-18 (1953). We again decline to require it.

We have carefully examined the record in this case. The trial transcript contains 20 consecutive pages of testimony and proceedings—not counting arguments of counsel which were not printed—on a motion to quash the arrest warrant. The transcript also contains 83 consecutive pages of testimony and proceedings—again not counting arguments of counsel—on the legality of the arrest, raised by a motion to suppress evidence. These pages comprise more than one third of the entire transcript. The appellant was at no time during trial precluded from

introducing evidence bearing on the issue of probable cause nor was he limited in any way in his examination of witnesses on this matter. At the end of all the testimony and argument concerning the arrest the trial judge specifically found that "there was indeed considerable evidence of probable cause." The reasons for his rulings fill several pages of the transcript. Under these circumstances we cannot say that appellant has been denied his constitutional right to a review of the magistrate's determination of probable cause.

## III

The appellant contends that the agents used the arrest of appellant as a pretext for the search of his car and person for narcotics and that the search thus violated his rights under the Fourth Amendment.

The evidence showed that Agent Lozowicki secured an arrest warrant for the appellant on April 12, 1967 at about 2:00 p.m. No attempt was made that day to execute the warrant. On the following day at 1:30 p.m., Agent Lozowicki, with Agent Shaheen and Sergeant Wineke, drove in a black Thunderbird to the vicinity of appellant's house and stationed themselves, in the car, approximately 1/4 block from the house and around the street corner in such a manner that they could not see the house. At the same time Agents Notel and Bland, driving a Mercury, stationed themselves approximately 3 blocks from the house in such a position that they could watch the house. The two groups remained in communication with each other by walkie-talkies. Agents Bland and Notel notified Agent Lozowicki when appellant left the house and entered his car. Appellant, instead of driving up the street, which was a one-way street toward Agent Lozowicki's location, backed down the street to an intersection and proceeded up a cross street. The agents gave chase and caught appellant about 5 or 6 blocks from the house. The appellant at all times was driving within the posted speed limits.

Agent Lozowicki testified that on April 12, 1967 he and other agents looked for appellant "on the avenue and some other areas" though they had not gone to his house, and that they did not find him. Although the agents had reason to believe that he was in his house on April 13, they did not attempt to ap-

proach or enter the house. Agent Lozowicki gave the following reasons for their decision not to try to arrest him in his house:

> "Usually he kept a downstairs door pretty well locked up. And if anyone ever knocked down there somebody would look outside. And, of course, we also had information that he usually had a dangerous weapon on his person. So also to reduce the element of risk of going into a house we thought we would wait until he got outside. And we couldn't stand too close to the door to his house because we were there several days before that and the whole neighborhood knows that we are there. So we were more or less a little out of sight . . . ."

When the agents did apprehend the appellant in his car they arrested him, searched him, and found narcotics in his pocket. They then searched the automobile and found narcotics and a pistol.

The Fourth Amendment prohibits unreasonable searches and seizures. That prohibition dictates, for example, that an arrest may not be used as a mere pretext to search for evidence. *United States v. Lefkowitz,* 285 U. S. 452 (1932); *Sedacca v. State,* 252 Md. 207 (1969); *Musgrove v. State,* 1 Md. App. 540 (1967). The rule applies not only in cases where the arrest is made without a warrant, see *Sedacca v. State, supra,* but also where the arrest is made pursuant to an arrest warrant. *United States v. Lefkowitz, supra; Taglavore v. United States,* 291 F. Ed 262 (9th Cir. 1961); *McKnight v. United States,* 183 F. 2d 977 (D.C.Cir. 1950).

Of course, where the arrest is a bona fide arrest and the search carried out as an incident to that arrest is not itself unreasonable there would be no constitutional infirmity. *Sedacca v. State, supra; Taglavore v. United States, supra.* In the instant case, appellant's attack is upon the bona fides of the arrest. We find no merit in his attack. It could reasonably be found from the record that the arresting officers had two or more motives in arresting appellant in his automobile rather than in his house. Clearly, one of these motives was to arrest appellant pursuant

to the command of the warrant. Where one motive is to make a bona fide arrest, a duality of motive will not, of itself, make the subsequent search unreasonable nor will it transform the arrest into a "pretext". *Sedacca v. State, supra; Musgrove v. State, supra.* In the instant circumstances the arrest was clearly a bona fide arrest pursuant to a valid warrant. The search of appellant's person was a permissible adjunct of the arrest, *Huber v. State,* 2 Md. App. 245, 260 (1967), particularly in view of the information the officers had concerning appellant's habit of carrying a deadly weapon. When the officers discovered narcotics in appellant's pocket, they had probable cause to believe that another felony was being committed by appellant. Pursuant to their immediate investigation of this crime they had the right to search the vehicle, which was under appellant's control, for further narcotics, which, when discovered, were properly seized. During the lawful search of the vehicle the pistol was discovered, and was also properly seized. *Robinson v. State,* 4 Md. App. 515, 528 (1968) ; *Gamble v. State,* 2 Md. App. 271, 276 (1967).

Appellant's reliance on *McKnight v. United States, supra,* is misplaced, for here, in contrast to *McKnight,* Agent Lozowicki's testimony showed that the arresting agents did not reject a prior "convenient present opportunity" to make the arrest. See *McKnight v. United States, supra* at 978.

## IV

The appellant contends that there was insufficient evidence to convict him of possession of narcotics under Indictment No. 2732.

At trial, Agent Lozowicki testified that after appellant was arrested pursuant to the arrest warrant he (Lozowicki) observed Sergeant Lawrence Wineke remove from the appellant's right front pants pocket a cellophane wrapper containing a number of capsules. Agent Lozowicki also observed Sergeant Wineke find a green paper bag containing a glassine bag of white powder under the driver's seat of the car. The capsules and the bag of powder were taken to the United States Customs Chemist and were found to contain heroin hydrochloride. As we stated above, this Court cannot reverse a judgment of the lower court unless

it is shown that there was no legally sufficient evidence, or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt. *Brown v. State, supra.* The weight of the evidence and the credibility of the witnesses are for determination by the trial court. *Brown v. State, supra.* Simply on the facts noted above we have no difficulty in determining that there was sufficient evidence of possession of narcotics, and the trial judge was not clearly erroneous in his decision. Maryland Rule 1086.

*Judgments affirmed.*