## VERNON ALLEN COLLINS *v.* STATE OF MARYLAND

[No. 338, September Term, 1972.]

*Decided April 5, 1973.*

The cause was submitted on briefs to ORTH, C. J., and GILBERT, J., and GEORGE W. BOWLING, Administrative Judge of the District Court of Maryland for District 4 and MARVIN J. LAND, Associate Judge of the District Court of Maryland for District 8, specially assigned.

Submitted by *Harold Buchman, Assigned Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, James L. Bundy, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Leslie L. Gladstone, Assistant State's Attorney for Baltimore City,* for appellee.

ORTH, C. J., delivered the opinion of the Court.

VERNON ALLEN COLLINS was arrested on 22 September 1970. When searched, incident to his arrest, a glassine envelope containing heroin hydrochloride was found on his person. He was charged with possessing heroin, tried at a bench trial in the Criminal Court of Baltimore, found guilty, and sentenced to 4 years. On appeal he challenges the admission in evidence of the heroin seized from him and asserts he was denied a speedy trial.

I

Collins filed a pretrial motion to suppress the evidence. Maryland Rule 729. The primary ground stated in the motion was that the search of him and the seizure of the contraband from him were unreasonable as proscribed by the Fourth Amendment to the Constitution of the United States. The motion was heard prior to trial. The State produced Detective John Haase of the Homicide Squad of the Baltimore City Police Department who testified that he arrested Collins on 22 September 1970 under the authority of an arrest warrant. The warrant was admitted in evidence. It was valid on its face, given under the hand and seal of a judge of the Municipal Court of Baltimore City on 10 September 1970. It was addressed "To any police officer of Baltimore City" and made the "complaint", set out above the warrant proper, a part of the warrant. It commanded such officer to apprehend the person charged in the complaint and to bring him before a judge of the Municipal Court of Baltimore City presiding in the Criminal Division to be dealt with according to law. The complaint read:

> "Det. Harold Rose — Homicide Squad (On information received) charges, upon information and oath, before me, a Judge of the Municipal Court of Baltimore City, in the State of Maryland that Vernon Allen Collins did commit

a criminal offense, to wit: did Assault and shoot one Alexander Small Butler 22 yrs., thereby causing his death in Baltimore City, State of Maryland, on or about the 2 day of Sept., 1970.

"Therefore this Complainant prays that the said person so charged may be apprehended and dealt with according to law."

The complaint stated, over the signature of the judge issuing the warrant, that it was subscribed and sworn to by Rose on 10 September 1970.

Collins did not adduce evidence on the issue. He argued, as he now argues, that there was no underlying basis shown for the issuance of the warrant, that is, that no probable cause appeared in the record sufficient to support the warrant. He claimed that the warrant was therefore invalid, the arrest under its authority illegal, the search and seizure incident to the arrest unreasonable, and the evidence so obtained inadmissible. The court denied the motion on the basis that an arrest warrant, unlike a search and seizure warrant, did not require an affidavit showing probable cause. This was a correct statement of the general rule of law then in effect.[1] See *infra*. The general rule, however, was not applicable in the particular circumstances of this case. The court erred in denying the motion.

## II

The Fourth Amendment to the Constitution of the United States proscribes the issuance of any warrant ". . . but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The

---

1. The application for a search warrant, made in writing and signed by the applicant upon oath before a judge or other authorized officer, is often referred to as the "affidavit." See *Buckner v. State*, 11 Md. App. 55. Compare Maryland Rule 5 c; Maryland District Rule 5 b. M.D.R. 706 a became effective 5 July 1971. It provides: "An application for an arrest warrant or summons to a defendant shall be made in writing, signed by the applicant upon oath before a judicial officer."

Supreme Court of the United States has clearly established in its decisions concerning Fourth Amendment probable cause requirements that before a warrant for either an arrest or a search can issue, the judicial officer issuing such a warrant must be supplied with sufficient information under oath to support an independent judgment that probable cause exists for the warrant. *Spinelli v. United States,* 393 U. S. 410; *United States v. Ventresca,* 380 U. S. 102; *Aguilar v. Texas,* 378 U. S. 108; *Rugendorf v. United States,* 376 U. S. 528; *Jones v. United States,* 362 U. S. 257; *Giordenello v. United States,* 357 U. S. 480. The same probable cause standards are applicable to federal and state warrants under the Fourth and Fourteenth Amendments. *Ker v. California,* 374 U. S. 23. And, of course, the sanction when evidence is obtained by an unreasonable search or seizure is to exclude it; the federal exclusionary rule is applicable to state prosecutions. *Mapp v. Ohio,* 367 U. S. 643.

In Maryland, probable cause for the issuance of a search warrant must appear in the affidavit supporting the warrant. No evidence may be received outside the four corners of the affidavit either to show the existence of probable cause or to controvert the truth of the allegations therein. *Scarborough v. State,* 3 Md. App. 208, 211-212. Probable cause for a challenged warrantless arrest may be shown by evidence of the circumstances surrounding the arrest. *Williams v. State,* 14 Md. App. 619; *Cleveland v. State,* 8 Md. App. 204. Probable cause for the issuance of an arrest warrant must be made known under oath to the issuing judicial officer, but we consistently held, prior to the adoption of M.D.R. 706, that it was not required that it be established by recorded testimony.[2] *Nadolski v. State,* 1 Md. App. 304.

2. The same quantum of probable cause is required for a warrantless arrest, an arrest warrant, and a search warrant. The standards applicable to the factual basis supporting an arresting officer's probable cause assessment at the time of a warrantless arrest and search incident are at least as stringent as the standards applied with respect to an issuing official's assessment upon the issuance of an arrest warrant or a search warrant. *United States*

See *Duggins v. State,* 7 Md. App. 486, 490, n.1. In *Williams v. State,* 6 Md. App. 511, we again declined to require recorded testimony. See *Scarlett v. State,* 201 Md. 310. An arrest warrant valid on its face establishes *prima facie* the legality of the arrest made on its authority, but this does not mean that in the absence of an affidavit, the accused may not introduce evidence bearing on the issue of probable cause or be limited in any way in his cross-examination of witnesses on the matter. *Williams v. State,* 6 Md. App. at 516-517; *Nadolski v. State, supra,* at 308. In the instant case, however, there was an affidavit, which, as is apparent from the terms of the warrant, supported the issuance of the warrant. In other words so far as the record before us reveals, the sole support for the arrest warrant issued at Detective Rose's request was the complaint. There being an affidavit, we must look to it to see if there was probable cause, and the general rule which we have held as governing with respect to arrest warrants issued without a written record of the complainant's assessment of probable cause is not applicable. The factual posture of the case here places it squarely within the ambit of *Whiteley v. Warden,* 401 U. S. 560, and we believe that case to be dispositive. Here, as in *Whiteley,* the complaint consisted of nothing more than the complainant's conclusion that the individual named therein committed the offense described in the complaint. Here, as in *Whiteley,* the actual basis for the complainant's conclusion was information from an unnamed informant with other operative facts omitted from the complaint; no facts were set out, for example, to show the credibility of the informant or the reliability of his information. Here, as in *Whiteley,* there was no showing that the complainant by his personal observations possessed sufficient factual information to support a finding of

---

*v. Ventresca, supra; Aguilar v. Texas, supra; Jones v. United States, supra.* See *McCray v. Illinois,* 386 U. S. 300; *Dawson v. State,* 11 Md. App. 694, 697, n.1. As to who may issue arrest warrants see *Shadwick v. Tampa,* 407 U. S. 345.

probable cause; on the contrary the complaint explicitly stated that the complainant's knowledge was "on information received." As was said in *Whiteley* at 568: "In sum, the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate." Therefore, Collins's arrest under the authority of the warrant violated his constitutional rights under the Fourth and Fourteenth Amendments.[3]

## III

Our holding that the arrest warrant was invalid, and the arrest, as made under its authority, was illegal, does not end our inquiry. "A police officer may arrest a person without a warrant if he has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in his presence or view." Code, Art. 27, § 594 B (c). It is the existence of probable cause at the time of the arrest which is the measure of the legality of the arrest. *Evans v. State*, 11 Md. App. 451. Probable cause may be based on information collectively within the knowledge of the police. *Hebron v. State*, 13 Md. App. 134. So even when an officer acting on a direction to arrest was personally without sufficient probable cause to justify the arrest, it may be shown that information within the knowledge of the police team constituted probable cause. *Thompson v. State*, 15 Md. App. 335. In such case, of course, the State is required to produce the evidence on which the officers initiating the arrest acted. *Id.* The statute here considered is declaratory of the common law rules of arrest without a warrant, and it does not affect the established definition of probable cause, *Rife v. State*, 9 Md. App. 658, which has the same meaning it had under the com-

3. *Whiteley v. Warden, supra,* enunciated no new rule of law. There is no question here of its retroactive application in any event, because it was decided 29 March 1971, and Collins was tried 17 February 1972.

mon law, *Wescott v. State,* 11 Md. App. 305. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse mere suspicion. *Cuffia v. State,* 14 Md. App. 521. Probable cause exists when the facts and circumstances within the knowledge of the arresting officer or the police team, or of which they had reasonably trustworthy information, are sufficient to warrant a reasonably cautious man in believing that a crime had been committed by the person arrested. Only the probability, and not a *prima facie* showing of criminal activity, is the standard for probable cause. *Hebron v. State, supra; Wescott v. State, supra.*

At the hearing on the motion to suppress, the evidence adduced went only to the legality of the arrest as made on the authority of the warrant. Because the warrant was invalid, it did not support the arrest of Collins so that the evidence secured as an incident thereto should have been excluded from his trial. Its admission was prejudicial error, and we must reverse the conviction.

Although it is patent from the transcript of the trial on the merits that the conviction of Collins was predicated solely on the heroin recovered from his person, we shall remand the case for a new trial. The State may be able to show that there existed probable cause for a warrantless arrest of Collins. Upon showing what information was received from the informant by Rose, the State may be able to establish that such information was from a credible informant or that the information was reliable. It may be that Rose or Haase gathered information which could be used to sustain a finding of probable cause even if it could not be adequately supported by the information received from the informant alone. *Draper v. United States,* 358 U. S. 307. Of course, such additional information acquired by the police team must in some sense be corroborative of the informant's information that Collins murdered Butler. *Whiteley v. Warden, supra,* at 567. In other words, on retrial the

State has the opportunity to prove the legality of the arrest of Collins without reliance on the warrant, and by so doing establish the reasonableness of the search and seizure by which the challenged evidence was secured. The legality of a warrantless arrest would be proved by showing that the police had facts and circumstances within their knowledge or reasonably trustworthy information thereof, sufficient to warrant a reasonably cautious man in believing that Collins had shot and killed Butler.

## IV

In remanding the case for a new trial, we have considered and rejected the claim of Collins that he was denied the constitutional right to a speedy trial.

The speedy trial provisions of the Sixth Amendment were engaged upon Collins's arrest on 22 September 1970. *United States v. Marion,* 404 U. S. 307; *State v. Hunter,* 16 Md. App. 306. Trial was had on 25 January 1972. What happened in the interim is material to the speedy trial issue.

On 5 October 1970 three presentments were filed and on 9 October three corresponding indictments were returned against Collins. Indictment 5269 charged that on 27 August 1970 he murdered O'Dan Layton. Indictment 5270 charged that on 2 September 1970 he murdered Alexander Small Butler. Indictment 5271 charged that on 22 September 1970 he possessed heroin. On 27 October he was arraigned before Harris, J. and upon inquiry by the court said he had an attorney, Nelson Kandel, that his family had paid a fee for Kandel to represent him, and that Kandel had visited him at the City Jail. It seems that Collins wanted Kandel to arrange for his release on bail. On 29 October Collins was arraigned before Sodaro, J. on indictments 5269 and 5270. He told Judge Sodaro that he did not want a lawyer appointed to represent him. On 17 November he was brought before Sklar, J. for arraignment on indictments

5269, 5270 and 5271. He told Judge Sklar he did not want a lawyer appointed to represent him. According to Collins he learned that Kandel was not able to obtain his release on bail and "dismissed the idea" of retaining Kandel as his attorney. In any event, Judge Sklar appointed James W. McAllister to represent Collins, and the appearance of McAllister in each of the three cases was entered on 24 November. McAllister moved for discovery with respect to each of the three indictments on 25 November, and the State filed answers on 17 December.

On 25 February 1971 Collins was presented and indicted for assaulting one Joseph Green with intent to murder, 1st count, and the assault and battery of Green, 2nd count, indictment 871. According to Collins the acts resulting in these charges occurred while he was incarcerated in the Baltimore City Jail. On 14 May 1971 the State entered a *nolle prosequi* as to indictment 5269.[4] On 1 June 1971 Collins filed a motion for a speedy trial as to indictment 5270. As of 21 January 1972 another attorney, Harold Buchman, appeared in the records. On that date Buchman filed a motion for discovery as to indictment 5270. On 24 January he filed a motion to suppress evidence as to indictment 5271. On 25 January indictment 5271 came on for trial in the Criminal Court of Baltimore before Dorf, J. It appeared from an inquiry as to how Buchman came to represent Collins, that Collins had been brought into court on 24 November 1971 on indictment 871. At that time Collins said he wanted to "fire" McAllister, and Ross, J. appointed Buchman. Buchman thought he had been appointed to represent Collins on all outstanding charges and felt that the filing of the motions as to indictments 5270 and 5271 was suffi-

---

4. The State gave as the reason for its action that it "felt" the evidence available showed the murder was committed while a felony was in progress but after interviewing the only witness and the evidence found at the crime scene, "felt" that it could not prove that a felony was being committed and therefore had insufficient evidence to show that Collins was an aider, abettor, or accessory of the person who actually killed the deceased.

cient to enter his appearance in those cases. Judge Dorf thereupon appointed Buchman to represent Collins in the case concerning indictment 5271 which was then before the court.

Buchman made an oral motion to dismiss indictment 5271 for lack of a speedy trial,[5] and the motion was heard. Collins testified on the issue. He said that he had received no notification of trial from 24 November 1970 to 1 June 1971. He had asked McAllister to file a motion for a speedy trial when McAllister was appointed to represent him. "And he refused to do this up until I went to court for 5269, and it was nol-prossed, and then he filed the motion for a speedy trial in the other two remaining cases." Thereafter, he received no notification of a trial date. Collins claimed that he wrote the Clerk of the Court who referred the letter to the State's Attorney. "[T]hey told me that I had a case pending against me from the Baltimore City Jail and I would not be taken up for any of my original cases until this case was disposed of, and I have this letter in Baltimore City Jail, but since I was denied the right to get my personal belongings I don't have it with me." The court said it would permit the letter to be submitted later. Collins asserted that he wrote "a number of different people concerning the case." He mentioned Arthur T. Murphy, Commissioner on Crime, and Chief Judge Dulany Foster, whom he wrote "at least three times concerning the length of time that I was awaiting trial." Collins said that Judge Foster replied that indictments 5270 and 5271 would be tried in November 1971, but trial was not held. He did appear in court in November 1971 on a charge of assault which had occurred at the Baltimore City Jail. It was then that he "fired Mr. McAllister" and obtained Mr. Buchman. He requested that Judge Dorf dismiss indictment 5271. "I feel that I have been denied the right to a speedy trial, and I have

---

5. Ultimately the State agreed, "for the purpose of the motion", that the motion for a speedy trial filed 1 June 1971 and docketed only as to indictment 5270 encompassed indictment 5271.

been incarcerated for seventeen months awaiting trial and I have never once had the opportunity to come and prove myself innocent of these charges." Asked whether he had been able to contact witnesses, he replied: "Well, like due to circumstances and conditions at Baltimore City Jail, it was rather hard for me to really get in contact with any witnesses in my behalf." Collins was asked what witnesses he would call concerning the charge of possession of heroin. He replied: "Marvin Blocker." He said that Blocker "was living in 1038 Argyle Avenue." The last contact he had with Blocker was "a couple of months ago." He had not notified Blocker to appear at the trial "because I didn't know where he was at . . . . He moved from his previous address . . . . [Blocker] had come to the Baltimore City Jail, but he was released." He had not given Blocker's name and address to either Buchman or McAllister. "From my information from Mr. McAllister, McAllister told me that the cases would be nol-prossed and it was no need for me to even prepare a defense." Blocker was the only witness he would call. The State asked for a proffer of Blocker's testimony, defense counsel objected, and the objection was sustained. The court deferred its ruling on the motion to dismiss until the conclusion of the trial on the merits.

At the close of all the evidence on the substantive issue, trial was continued to permit Collins to submit additional evidence on the speedy trial issue. Trial resumed on 17 February 1972. Defense counsel informed the court that the record had been completed by the inclusion of "some correspondence" referred to by Collins at the hearing on the motion for a speedy trial. The judge denied the motion to dismiss the indictment, noting that he had reached his decision after considering the length of the delay, the reasons for the delay and prejudice to the accused. He concluded that the evidence did not warrant dismissal of the indictment. He said: "I think that most of the actions of the accused himself caused the majority of the delays in this trial." The court

rendered a verdict of guilty of possession of heroin as charged in indictment 5271 and imposed sentence.[6]

On our independent constitutional appraisal of the entire record, we reach the same conclusion as did the court below. Although the course of the charges against Collins through the Criminal Court of Baltimore could have been more orderly, we find that the portion of the delay in bringing indictment 5271 to trial properly chargeable to the State, was not of constitutional dimension. We think it clear that counsel felt it of strategic importance to attempt to dispose of the murder charges before going to trial on the narcotic offense. We also note the change of counsel at Collins's instigation. In any event we see no prejudice to the person of Collins by the delay in trying indictment 5271 because he was being detained on other charges. There was no prejudice shown to his defense. The case against him was singularly uncomplicated and afforded little opportunity for a realistic defense. Officer Haase testified that he arrested Collins on 22 September 1970 under the authority of an arrest warrant and on a search incident to the arrest a glassine bag containing a white powder was found in Collins's right trouser pocket. The report of the analysis, received in evidence without objection, showed that the powder was heroin hydrochloride. Collins elected not to testify and adduced no evidence. As to the alleged witness, Blocker, there was no proffer of his testimony, and his name had not even been given by Collins to his counsel. In the circumstances, we find no oppressive pretrial incarceration; we do not believe an earlier trial was mandated to minimize the anxiety and concern of the accused; we see no reasonable

---

6. The further course of indictment 5270 is traced from the docket entries. On 17 February 1972 Collins filed a motion to dismiss the indictment and requested a hearing thereon. On 16 May 1972 he filed, in proper person, a motion for dismissal, motion for a speedy trial and request for a hearing. On 19 June, in proper person, he applied for a writ of mandamus for dismissal of the indictment. On 23 June a *nolle prosequi* as to the indictment was entered by the State. The reason assigned was "The State has insufficient evidence at this time to sustain a verdict of guilty without reasonable doubt."

possibility of impairment of the defense. *Barker v. Wingo,* 407 U. S. 514; *State v. Dubose,* 17 Md. App. 292. There was no denial of a speedy trial in the constitutional sense with respect to indictment 5271.

*Judgment reversed; case remanded for a new trial.*