PETER XAVIER HAINA AND CARLA WYANETTE STRAWBRIDGE *v.* STATE OF MARYLAND

[No. 674, September Term, 1975.]

*Decided February 26, 1976.*

296

The cause was argued before ORTH, C. J., and THOMPSON, MENCHINE and MASON, JJ.

*Richard H. Sothoron, Jr., Assigned Public Defender,* with whom were *DePaul, Willoner & Kenkel, P.A.* on the brief, for appellant Haina. *Joseph A. DePaul,* with whom were *DePaul, Willoner & Kenkel, P.A.* on the brief, for other appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Thomas A. Blair, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Carla Wyanette Strawbridge and Peter Xavier Haina were convicted for violation of the controlled dangerous substances laws of Maryland by the Circuit Court for Prince George's County. Haina was sentenced to a total of 20 years. Strawbridge was sentenced to a total of 5 years, which sentences were suspended except for 12 days to be served on 6 consecutive weekends and placed on active probation for 5 years. The primary issues on appeal concern the validity of a wiretap order under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510-2520.

### Wiretaps

Both appellants initially contend that the wiretap order was invalid because of the failure of the application and order to name the appellant Strawbridge as a person who was committing the offense and whose communications

were to be intercepted. The pertinent provisions of 18 U.S.C. § 2518 in support of these contentions are:

> (1)(b)(iv) — "Each application shall include the following information: . . . the identity of the person, if known, committing the offense and whose communications are to be intercepted. . . ."
>
> (4)(a) — "Each order authorizing or approving the interception of any wire or oral communication shall specify — the identity of the person, if known, whose communications are to be intercepted . . . ."

The appellants, relying on a partial quotation of dictum of the United States Supreme Court in *United States v. Kahn*, 415 U. S. 143, 94 S. Ct. 977, 39 L.Ed.2d 225 (1974)*, argue that the standard for determining whether or not a person is "known" within the meaning of the statute is whether or not the government had reason to suspect that person's complicity in the commission of the offense and the use of the telephone. In *Kahn, supra*, however, the Supreme Court stated that:

> "We conclude, therefore, that Title III requires the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that the individual is 'committing the offense' for which the wiretap is sought." *Id.* at 155.

It is evident then that "probable cause" to believe that a person is committing a specific crime and may be overheard on a specific telephone and not a "suspicion" is the standard to determine whether he is known to the State within the meaning of the statute. *United States v. Bernstein*, 509 F. 2d 996 (4th Cir. 1975); *United States v. Donovan*, 513 F. 2d 337 (6th Cir. 1975); *United States v. Doolittle*, 507 F. 2d 1368 (5th Cir. 1975), reargued 518 F. 2d 500; [1] and also *see United*

---

* In that case the Court found the named person's wife was not a known party because the government had no information as to her use of the telephones for gambling purposes.

1. Petitions for certiorari are now pending before the Supreme Court in all three of these cases.

*States v. Moore*, 513 F. 2d 485 (D.C. Cir. 1975) construing the local law for the District of Columbia which is, for these purposes, identical with the general statute.

To determine whether or not there was probable cause to believe that the appellant Strawbridge was violating the controlled dangerous substance laws and would be using the specific telephones we first turn to the affidavit of PFC Howard S. Blake in support of the application for the ex parte order for the interception of the wire communications. Consisting of 24 pages, it detailed through a confidential source, whose reliability is not questioned and is referred to in the affidavit as (CS), and independent investigation by the affiant the reasons which he believed that the appellant Haina was engaged in a large wholesale illicit drug operation. The affidavit includes the following four references to the appellant Strawbridge:

1. "The (CS) has known Peter Xavier Haina for approximately three (3) years. The (CS) stated that Peter Xavier Haina resides at (5611 Monroe Street, Cheverly, Prince George's County, Maryland). The said (CS) further related that the said residence (5611 Monroe Street, Cheverly, Prince George's County, Maryland), is the residence of Peter Xavier Haina's mother and that Peter Xavier Haina resides in the upstairs portion of the said residence with his girlfriend, a white female known as 'Carla'.

2. "The (CS) has told me that Haina's girlfriend, a white female known as 'Carla', *is also involved in the same scheme to distribute controlled dangerous substances*. The (CS) stated that it has telephoned Haina as recently as the month of June, 1974, and that the (CS) has talked to 'Carla' on the occasions when Haina was not at home. The (CS) further related that 'Carla' had Haina return the (CS's) telephone calls that it had made to Haina when Haina was not at home. The (CS) *further stated that it has had drug related conversations with 'Carla' while talking to her on Haina's telephone number* (927-4724).

"The (CS) stated that on the basis of its many in person and telephone conversations with Peter Xavier Haina and the white female known as 'Carla', it is absolutely positive in its identification of the person's voices over the telephone."

3. "The (CS) also stated to your affiant that Peter Xavier Haina operates a late model Chevrolet, Corvette, gray in color which bears Maryland Registration LR 9024. The (CS) also related to your affiant that Haina occasionally operates a Volkswagon, light blue in color which bears South Carolina registration (UIB 147), and that this vehicle belongs to Haina's girlfriend who is known as 'Carla'.

4. "A registration listing furnished to me by the South Carolina Motor Vehicle Administration revealed that South Carolina registration UIB 147 was on a 1970 Volkswagon, listed to one: Carla W. Strawbridge, 111 Arrowwood Road, Columbia, South Carolina.

"This leads your affiant to believe that the above listed Carla W. Strawbridge is the same white female known as 'Carla' who resides with Peter X. Haina at 5611 Monroe Street, Cheverly, Prince George's County, Maryland." (Italics added)

When the facts in the affidavit are taken as a whole, we find that the State had probable cause to believe that Strawbridge was involved in the narcotics operation and would be using either of the two telephones that was to be monitored under the application and order. As stated before the veracity of the informant is not questioned, nor can his basis of knowledge be challenged. *Aguilar v. Texas*, 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). The information he recited to Officer Blake was gained from personal dealings with the appellants. While his references to Strawbridge are of a conclusive nature, when they are taken in context they are sufficient. Appellant

Haina's operation was conducted through the use of a telephone in the upstairs portion of the house where Strawbridge resided. When Haina was not at home, the informant would have "drug-related conversations" with Strawbridge. She would then have Haina return the call. The informant would then purchase narcotics from Haina. These facts sufficiently support the statement that Strawbridge was also involved in the same scheme to distribute controlled dangerous substances. It was not necessary that the informant detail his "drug-related" conversations with Strawbridge in order for the State to have probable cause to believe that Strawbridge was involved in the scheme, when it is obvious, when taken with the other facts, that she was. It should be pointed out that probable cause does not mean mathematical certainty nor even proof beyond a reasonable doubt. It is sufficient if the officers had reasonable grounds to believe that the individual was involved in the illicit activities and in the use of the telephones. *See Collins v. State*, 17 Md. App. 376, 302 A. 2d 693 (1973). It was mandatory that Strawbridge be named in the application and order.

Further evidence that Strawbridge should have been named in the application is revealed by the testimony of Officer Blake at the suppression hearing:

Q. "Weren't you aware that Carla Strawbridge was in fact involved with Peter Haina in narcotics operations out of 5611 Monroe Street?

A. "Yes, sir.

Q. "And the reason you were made aware of that was based on the information relayed to you by your informant, is that correct?

A. "Yes, sir.

Q. "And you went ahead and corroborated your informant's information by checking with the Department of Motor Vehicles in South Carolina?

A. "Yes, sir.

Q. "And based on your independent observations?

A. "Yes, sir.

Q. "In your mind, I am talking now prior to July 10, 1974, you were, for all intents and purposes, sure in your mind that Carla Strawbridge was involved with Peter Haina in terms of narcotics operations?

A. "Not completely, no, sir."

While this was not a consideration which could have been taken into account by the judge at the signing of the order, it is further evidence that Strawbridge was a known person to the State at the time they made out the application for the order.

The reasons for the rule that the application and order must name an individual whose conversations there is probable cause to believe is involved in illegal activity and will be using the telephones in question are well set out in *United States v. Bernstein, supra,* which we summarize. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 was enacted to protect the policy of wire communications allowing the use of electronic surveillance in investigation of certain crimes. It prohibits wiretapping to collect general intelligence about individuals. Even though a naming of a known offender whose conversations are to be intercepted may not be a constitutional requirement, *United States v. Kahn, supra,* note 15, identification fosters conformity with both constitutional and statutory requirements; "in particular it is important to the exercise of (A) executive approval, (B) prior judicial authorization and (C) subsequent judicial review of interception." For these reasons, *Bernstein* found that identification of known persons was a precondition to a valid intercept order and failure to identify renders an interception contrary to law and invalid as to that person. The Maryland Court of Appeals in *State v. Siegel,* 266 Md. 256, 292 A. 2d 86 (1972), held that there must be a strict compliance with the statute in order to obtain a valid order to engage in wiretapping. The recent case of *Spease and Ross v. State,* 275 Md. 88, 338 A. 2d 284 (1975), reiterated its holding insofar as the original

application and order were concerned, while holding an unintentional failure to serve notice of the tap upon a named accused does not require suppression of intercepted conversations, in the absence of prejudice. The United States Supreme Court, subsequent to *Siegel, supra,* also held that there must be a strict compliance with a statute in order to obtain a wiretap order. *United States v. Giordano,* 416 U. S. 505, 94 S. Ct. 1820, 40 L.Ed.2d 341 (1974). The lack of strict compliance with this condition precedent to a valid order in regards to Strawbridge, prevents the introduction of any evidence derived from the wiretap into evidence against her. *Bernstein, supra;* 18 U.S.C. § 2515, *infra.*

The State argues (assuming she should have been named in the warrant) her convictions for the simple possession of cocaine and of marijuana should not be reversed. The evidence shows that while the wiretaps were in progress the appellant Haina engaged in two telephone calls in which he was informed that a confederate had been arrested and had named him as one involved in the drug traffic. Haina's response was that he intended to "clean house." As the result of hearing these conversations, the police officers stationed observers at the Haina home and observed the appellant Strawbridge bring a green bag out of the front door of the home and dispose of it after she walked to the side of the house out of the sight of the officers. A subsequent search located the bag under the porch of a neighbor's house. The bag contained cocaine and marijuana which serve as a basis for appellant Strawbridge's convictions and supported the several convictions of the appellant Haina. The wiretaps showing appellant Strawbridge's conversations were introduced into evidence and showed that her possession was not that of an innocent agent, therefore, her conviction must be reversed for this reason alone.

We think her convictions must be reversed for yet another reason. It is apparent from what we have said, that Strawbridge was arrested directly as a result of the wiretap on her residence even though she was not a party to the conversations which precipitated her being found in

possession of the prohibited controlled dangerous substances; thus, if she has standing, which we will discuss hereinafter, the physical evidence as to her must also be suppressed. *Carter v. State,* 274 Md. 411, 337 A. 2d 415 (1975), held that Maryland must follow the fruit of the poison tree doctrine first set up in *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963). In *Carter, supra,* the Court held that information obtained by an illegal wiretap could not be used as a basis for procuring a search warrant which was otherwise valid. In the instant case, however, we would be required to hold the seizure of the narcotics invalid as to the appellant Strawbridge under the clear language of the federal statute, which states:

18 U.S.C. § 2515:

"Whenever any wire or communication has been intercepted, no part of the contents of such communication and no *evidence derived therefrom* may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

18 U.S.C. § 2518:

(10)(a) "Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, *or evidence derived therefrom,* on the grounds that —

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval. . . ." (Italics added)

In *Alderman v. United States*, 394 U. S. 165, 89 S. Ct. 961, 22 L.Ed.2d 176 (1969), it was found that the term "aggrieved party" did not apply to everyone against whom damaging evidence derived from an illegal wiretap was introduced. In order to suppress the party must have had his right to privacy breached by the surveillance. A petitioner is "entitled to the suppression of government evidence originating in electronic surveillance violative of his own Fourth Amendment right to be free of unreasonable searches and seizures. Such violation would occur if the United States unlawfully overheard conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations." *Alderman, supra* at 176. It is obvious, therefore, from the legislative history of Title III and the Supreme Court interpretation that the term "aggrieved party" is to be construed in accordance with existing standing rules to invoke the Fourth Amendment for a suppression motion.[2] In the case at bar evidence was introduced against Carla Strawbridge which State officials obtained by overhearing conversations occurring from her residence. For this reason she had standing to challenge the fact that she was not named in the application and order.

The appellant, Haina, contends inasmuch as the warrant was invalid as to appellant, Strawbridge, he as well as she is entitled to object to all evidence that was obtained as a result of the wiretap. As we have said before since it was also his residence he would appear to have standing. As pointed out in *Alderman, supra* at 180, n. 11, however, a property owner's right to object comes from a violation of his rights, not from an invasion of the rights of his family or invitees. In the case at bar Haina was named in the application and order; therefore, none of his privacy rights were illegally invaded. *Alderman, supra,* also held that

---

2. See S. Rep. No. 1097, 90th Cong., 2d. Sess., 91 (1968).

evidence inadmissible against one co-conspirator is not inadmissible as to another co-conspirator.

To support his argument appellant Haina cites *United States v. Bernstein, United States v. Donovan,* and *United States v. Moore,* all *supra.* We see no support to appellant Haina's position in any of them. On the contrary the language of all indicates quite clearly that only the unnamed person can benefit from this type of invalidity in the application and order for the wiretap. *United States v. Bellosi,* 501 F. 2d 833 (D.C. Cir. 1974) tends to support the appellant's argument. We do not find it persuasive, however, because although anyone aggrieved has standing under the statute this does not mean he can prevail unless his own privacy has been invaded.

Haina's second contention is that the application did not contain a statement as to whether or not other investigative procedures had been tried and failed, or why they appeared unlikely to succeed if tried, or to be too dangerous.

A statement describing the feasibility of other investigative techniques was in compliance with 18 U.S.C. § 2518 (1) (c). This statute reads as follows:

"(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

"(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;"

Detective Blake's affidavit was incorporated in the application and included the following:

"Further, it appears to your affiant that the use of electronic devices to intercept and record certain

narcotic related telephonic communications of Peter Xavier Haina and others yet unknown, is required to prevent the further commission of the aforementioned crimes and to secure evidence of the commission of the said crimes.

"Your affiant represents that the particular types of communications sought to be intercepted and recorded are those concerning violations of the laws relating to controlled dangerous substances, and more particularly, those telephonic communications between Peter Xavier Haina, and his suppliers of controlled dangerous substances are stored and others yet unknown concerning:

"(1) The dates, times, places, and manner in which illicit drugs will be delivered to Peter Xavier Haina and others yet unknown,

"(2) The dates, times, places, and manner in which illicit drugs are distributed by Peter Xavier Haina and others yet unknown, and

"(3) The prices that the above mentioned persons pay for illicit drugs and the dates, times, places, and manner of payment for the said drugs.

"These wire communications will be between the aforementioned persons and their co-conspirators in the alleged scheme to distribute controlled dangerous substances and narcotic drugs and the wire communications to be intercepted will concern:

"(1) The identity, telephone numbers, place of residence, places of purchases, places of delivery, manner of delivery and purchase, and the locations where the controlled dangerous substances are stored by the co-conspirators, between the aforementioned persons."

"The (CS) further related that Haina has become extremely apprehensive about possible police interference with his illicit drug business and that Haina has since removed large quantities of drugs from within his residence. The (CS) related that

Haina's present method of doing business is for a prospective purchaser of cocaine, marijuana, or other controlled dangerous substances to telephone Haina at his home, using either (927-4724) or (864-9433). Haina then tells the purchaser to go to a location, and then Haina calls a third person using one of the same two (2) telephone lines. Haina in his conversation with the third person, directs the third person to get the necessary quantity of drugs from a 'stash' (drug jargon known by your affiant as meaning a location where narcotics are stored) and to go to a prearranged location where the three (3) men, meaning Haina, the purchaser, and the third person meet and the drug and money are exchanged, or Haina himself will go to the location where the drugs are stashed and transport the drugs personally to the prearranged location where he will meet with the purchaser and the transaction of the money and drugs is made.

"The (CS) further stated that Haina, as a dealer in controlled dangerous substances normally will deal only with dealers and will not sell quantities less than wholesale quantities. That is, Haina does not usually make sales to the ultimate users of the illicit drugs. Haina has told the (CS) that by dealing only with dealers, Haina deals with persons whom he personally knows and trusts.

"I questioned the (CS) about the possibility of having the (CS) introduce an undercover police officer to Haina so that a police officer could purchase controlled dangerous substances directly from Haina, but the (CS) stated that this would be impossible due to Haina's policy of dealing only with persons whom he has known and sold controlled dangerous substances to for a long time.

". . . The source stated that the execution of a search and seizure warrant would be of little value since Haina did not keep his large quantities of drugs at his house any more and that Haina always

has the drugs brought from a 'stash' to a randomly picked location often prearranged over the telephone for his drug transactions. . . .

"The (CS) stated that it does not know and cannot learn the locations of any of Haina's 'stashes'. The (CS), despite its long friendship with Haina, has been unable to ascertain Haina's source of illicit drugs, other than that one of the major sources is in Prince George's County, Maryland and that another major source of supply is in the state of Virginia.

". . . .

"The (CS) was questioned by your affiant as to Haina's driving habits and it was related to your affiant by the (CS) that Haina often drives his vehicle in an erratic manner by using excessive speeds and then by slowing his vehicle down considerably and making abrupt turns without warning. The (CS) stated that Haina constantly looks in his rear view mirror and uses the aforementioned maneuvers to make sure he is not being followed.

". . . .

". . . I have attempted to follow Haina, with the help of other members of the Prince George's County, Maryland, Police Vice Control Section, on these occasions by placing moving motor vehicle surveillance on him and his vehicle. On all of these occasions Haina would drive in an erratic manner by rapidly accelerating his vehicle and then abruptly reducing speed, and would also make abrupt turns without warning. From my previous experience in automobile surveillance of suspected drug violators, I recognize Haina's erratic driving pattern to be a counter-surveillance technique, frequently used by drug violators.

"Your affiant then contacted Sergeant David W. VanDyke of the Prince George's County Police Department Vice Control Section, who had conducted a narcotics investigation on the same

Peter Xavier Haina during the month of April, 1974, and questioned Sergeant VanDyke as to the methods of moving surveillance he employed while attempting to follow Haina, while Haina was operating his vehicle. Sergeant VanDyke stated to your affiant that Haina drove in a very erratic manner as to elude anyone that might be following him. Sergeant VanDyke further related to your affiant that the case he investigated on Haina was closed ón an inactive status, since all surveillance methods failed to reveal any narcotic activity and he was unable to develop an informant to supply him with any information, as to Haina's drug related activities.

"Your affiant then reviewed the transcript from the Maryland Motor Vehicle Administration which revealed that Peter Xavier Haina has received at least six citations for exceeding the posted speed limit. This further confirms the confidential source's statement that Peter Xavier Haina drives in an erratic manner and fits into the pattern of driving observed by your affiant during the attempted surveillance period previously mentioned.

"Your affiant discontinued the surveillance at this point. My decision to terminate surveillance on Haina's residence was that my presence in the neighborhood, as well as my driving past the residence, had begun to attract attention of some of the other residences in the neighborhood. This occurred despite the fact that I used a variety of undercover vehicles, which are completely unidentifiable as Police cars, to conduct the surveillance, seldom using the same vehicle on any two consecutive occasions. As a result of the attention any presence had attracted, I feared that one of two things would happen: (1) that Haina, himself, would observe that his house was under surveillance, or (2) that one of Haina's neighbors

would inform him that his house was under surveillance. Therefore, after discontinuing the aforementioned types of surveillance, all members of the Vice Control Section stayed completely away from Haina's residence for over a week.

"By the time surveillance on Haina's residence was terminated on June 30, 1974 I had concluded that the confidential source had been correct in its assertion that Haina no longer allowed illicit drug dealers to come to his residence and make their drug transactions as no apparent drug related traffic was observed going to or from Haina's residence."

The affidavit recited also other information concerning the reasons other investigative techniques would not work but we think we have recited sufficient portions to show the lack of a substantial basis for the appellant's argument concerning the feasibility of other investigative techniques. Nevertheless we will set out each of the techniques that the appellant alleges could have been employed together with our comment thereon:

"(1) confidential informants (An informant was used but it was never explained why he, or she never testified at the trial.)"

We see no reason why the application should or could explain why the confidential informant did not testify at trial.

"(2) investigation of criminal backgrounds (Some names of persons with criminal records were obtained from the appellant's seized phone books but many names in the books were not investigated at all)"

These records had been seized in a raid on the appellant's premises two years earlier. It would seem that the investigation of the criminal background of persons mentioned in such stale information would not necessarily be of any current value unless and until it was established

that they were still engaged with the appellant in an illegal activity.

> "(3) mobile surveillance of an automobile (The appellant was followed at times but he was not followed when he was with co-defendant Strawbridge)"

We see no reason the appellant Haina can complain because he was not followed the three times the officers saw him with the appellant Strawbridge.

> "(4) fixed surveillance of a residence (Appellant's residence was monitored for less than a month but there was no systematic effort to obtain the identities of all persons dealing with the appellant)"

We think the affidavit adequately explained why the appellant's residence was not subjected to further surveillance.

> "(5) direct contact with the subject (There was some testimony, mostly conclusory, from Det. Davis of the Maryland State Police that direct contact was not possible)"

We feel that direct contact would have been impossible because, as stated in the affidavit, appellant Haina only dealt with known and trusted friends.

> "(6) search warrants (A search warrant of appellants' residence was obtained from District Court Judge Vincent Femia on June 22, 1974 but it was never executed)"

The record shows that the warrant was not executed because the police officers received information the appellant had moved the narcotics from his home. Furthermore, the police are under no obligation to make an arrest of one person before the identities of the other members of a conspiracy

are determined. *See United States v. Armocida,* 515 F. 2d 29 (3rd. Cir. 1975).

> "(7) immunity grants (Despite the fact that the controlled dangerous substance law specifically provides for the granting of immunity Art. 27 § 298 (c), the record discloses that only once during trial did the State attempt to grant immunity and immunity was not mentioned at all in the application.)"

Once again we do not see how what happened at trial would have any bearing on what an application should show but we think the application and accompanying affidavit sufficiently explain the inability to penetrate the appellant's operation and that any attempt to grant immunity to any persons involved would simply have led to appellant learning he was under intensive investigation.

> "(8) pen registers. (The record discloses no use of pen registers.)"

A pen register is simply a device attached to a telephone which discloses the numbers called from that phone. Under the facts alleged in the application, it seems apparent to us that resort to pen registers, which do not record conversations, would be of limited value and would have to have been thereafter followed by a regular wiretap.

> "(9) eavesdropping on an informer (*Osborn v. United States,*[3] *supra* authorizes this type of investigative technique but no mention was ever made in the record why this means would not be feasible)."

It is apparent the mere recording of a conversation of the informer with Haina would not be likely to reveal the names of the others who were involved in the purchase and distribution of the narcotics in the Haina organization.

We agree fully with the appellant's quote from *United*

---

[3]. 385 U. S. 323, 87 S. Ct. 429, 17 L.Ed.2d 394 (1966).

*States v. Lanza,* 356 F. Supp. 27, 30 (M.D. Fla. 1973) as follows:

> "The purpose of the exhaustion requirement is not to foreclose the use of electronic surveillance until the state has exhausted every possible means of obtaining a viable case against the subjects, but merely to inform the authorizing magistrate or judge of the nature and progress of the investigation and the difficulties inherent in the use of normal techniques."

In short, it is difficult for us to imagine that the application could have more fully complied with the section of the statute requiring the State to show why other investigative techniques would not succeed.

### Indictment

Haina alleges counts 1 and 17 of the indictment are unconstitutionally vague. Count 1 of the indictment charged that the appellant ". ... unlawfully conspired to violate the controlled dangerous substance laws of the State of Maryland . . ." and Count 17 of the indictment charged that the appellant ". . . unlawfully did keep and maintain . . . a common nuisance, for the purpose of storing, concealing, administering or dispensing controlled dangerous substances. . . ." The first count of the indictment follows the statutory form set out in *Md. Code,* Art. 27, § 40 and is sufficient without specifying the particular drug involved. *Scarlett v. State,* 201 Md. 310, 93 A. 2d 753 (1953) and *Quaglione v. State,* 15 Md. App. 571, 292 A. 2d 785 (1972).

Count 17 of the indictment followed the language of *Md. Code,* Art. 27, § 286 (a) (5) and thus was sufficient. *Baker v. State,* 6 Md. App. 148, 250 A. 2d 677 (1969). Although the trial judge denied a demand for particulars he pointed out in ruling on a motion to dismiss Count 1 of the indictment that appellant Haina had access to all of the State's evidence and knew exactly the charges against him.

## Hearsay Evidence to Establish Conspiracy

Appellant Haina, citing the familiar rule that a conspiracy must be shown by evidence *aliunde* before hearsay declarations of a co-conspirator can be admitted into evidence, contends that inasmuch as all of the evidence of the conspiracy was that recorded on the tapes, the tapes could not be admitted for that purpose. He relies primarily on *United States v. Rich*, 518 F. 2d 980 (8th Cir. 1975). Although the facts of that case are not entirely clear, it seems that the statements there were statements made by a conspirator out of the presence of the co-conspirators. The Court did not reach the point because it found ample evidence outside the declarations of the co-conspirators to prove the conspiracy. In making his arguments, appellant overlooks the fact that the declarations of one co-conspirator are admissible against a co-conspirator when forming a part of the conversation between them and the acts of one are admissible against the other when done in the latter's presence and while the conspiracy is in progress. *See Mason, Taylor and Taylor v. State*, 18 Md. App. 130, 305 A. 2d 492 (1973); U. S. *cert. denied*, 416 U. S. 907; *Irvin v. State*, 23 Md. App. 457, 328 A. 2d 329 (1974), *aff'd*, 276 Md. 168 and 3 Underhill, *Criminal Evidence* § 81 (5th ed. 1957). In the instant case, it is apparent that the bulk of the conversations which showed the conspiracy were made under these conditions, therefore, the evidence was not hearsay and constituted substantive proof of the conspiracy. In addition, appellant makes the far-fetched argument that because the tapes of the telephone conversations were introduced through the testimony of Detective Blake all of the tapes were hearsay evidence. Detective Blake testified as to the accuracy of the recordings. The recordings were played to the jury. This did not make the recordings hearsay. Indeed, the appellant's own statements on the tapes were sufficient independent evidence of the conspiracy to support the admission of the few statements of some of his co-conspirators when he was not a party to the conversations. For a further discussion, see 58 A.L.R.3d 598.

*Appellant Haina's Standing to Contest the Admission
of the Green Bag and Its Contents Into Evidence*

As we have indicated the green bag was seized on a neighbor's property. It is not accurate to say that the appellant had no standing to object to its introduction into evidence under *Jones v. United States,* 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), as recently interpreted by the Maryland Court of Appeals in *Duncan & Smith v. State,* 276 Md. 715 (1976) because any time, in the context of a possessory crime, an accused is alleged to be in possession of an object he has standing to object to its introduction into evidence and to suppress it if it is illegally seized as to him. In the instant case, however, there was no showing to indicate that the appellant had any right to store his property under his neighbor's porch, therefore, it was simply not an area in which he had a right to expect privacy. The *Jones, supra,* rule is limited to a person rightfully on the property. The appellant's reliance on *Garrison v. State,* 28 Md. App. 257, 345 A. 2d 86 (1975), is misplaced because in that case it was determined that the police officers were trespassers and spying on the appellant in the basement of an apartment house at a time he had a right to be in that part of the premises. Appellant Haina attempts to bring his case within that rule by alleging that one of the officers who was shown to be standing to the rear of the appellant's property concealed in a woods was on the appellant's property. The record does not support such a finding because there is nothing to show that the woods was a part of the appellant's property.

> *Judgment reversed as to Strawbridge.*
> *Judgment affirmed as to Haina.*
> *Costs of the appellant Strawbridge to be paid by Prince George's County.*