UNITED STATES of America

v.

Walter R. WEBSTER et al.

UNITED STATES of America

v.

Arnetta Delly ENNELS et al.

Crim. Nos. Y–79–060, K–79–059.

United States District Court,
D. Maryland.

June 26, 1979.

**588**

Glenn L. Cook, and D. Christopher Ohley, Asst. U. S. Attys., Baltimore, Md., for United States.

Harold I. Glaser, Baltimore, Md., for defendants Walter R. Webster and Norma Thompson.

Michael Marr, Baltimore, Md., for defendant Richard Adams.

Howard L. Cardin, Baltimore, Md., for defendants ,Boysie Ash and Norman Henson.

Harry B. Allen, Oxon Hill, Md., for defendant Richard Wilkes.

Leslie L. Gladstone, Baltimore, Md., for defendant Melvin Stanford.

Stanley H. Miller, Baltimore, Md., for defendant John V. Christian.

Josh Treem, Baltimore, Md., for defendant Jane Doe.

Benjamin Lipsitz, Baltimore, Md., for defendant Herbert Leon Johnson.

William Murphy, Baltimore, Md., for defendant Norman George Johnson.

Dean P. Gunby, Baltimore, Md., for defendant Julius Odell Martin.

Robin John Pecora, Baltimore, Md., for defendant Duran Montgomery.

James M. Kramon, Baltimore, Md., for defendant Dennis Elroy Smith.

Peter Ward, Baltimore, Md., for defendant Sharon Taylor.

Mark Lee Phillips, Baltimore, Md., for defendant Victoria Wills.

Kenneth L. Thompson, Baltimore, Md., and George L. Russell, Jr., Baltimore, Md., for defendants Arnetta Delly Ennels, Barbara Moaney, and Nathaniel Knox.

John A. Hayes, Baltimore, Md., for defendant Danny Ragland.

David B. Mitchell, Baltimore, Md., for defendant Venus Briscoe.

Joseph Kiel, Towson, Md., for defendant Jesse Robinson.

JOSEPH H. YOUNG, District Judge.

These two narcotics conspiracy cases were consolidated for the purpose of ruling on defendants' open motions to suppress certain conversations intercepted by court-ordered wiretaps. The defendants in Y–79–060 have either filed or adopted motions seeking to suppress all evidence obtained either directly or indirectly from electronic surveillance of certain telephone numbers on the grounds that the state-ordered wiretap failed to satisfy the requirements of Md.Cts. & Judic.Proc.Code Ann. §§ 10–401 *et seq.* and the federal wire interception statute, 18 U.S.C. §§ 2510–2520 (Title III, Omnibus Crime Control and Safe Streets Act of 1968). Defendants Ennels and Knox in K–79–059 along with other defendants in that case have also filed a motion to suppress the evidence obtained from the wiretaps.

The supporting memoranda accompanying the motions challenge the legality of the wiretaps on essentially three grounds: (1) that the affidavit upon which Judge Robert L. Karwacki, Criminal Court of Baltimore City, authorized the surveillance failed to demonstrate the requisite probable cause; (2) that the two affiants, Detective Charles Smoot of the Baltimore City Police Department, and Trooper Michael Callanan of the Maryland State Police, did not demonstrate in other than a conclusory fashion that other investigative techniques had been tried and had been unsuccessful or could not reasonably be expected to be successful; and (3) that there was no probable cause to believe that the alleged crime was being committed by use of a telephone. Defendant Ennels further argues that suppression is warranted due to the unconstitutionality of the state and federal wiretap statutes. Additional challenges are presented based on alleged improper or inadequate "minimization." Having urged these deficiencies with respect to Judge Karwacki's initial wiretap authorization of May 10, 1978, the defendants conclude that the two subsequent wiretaps authorized, the extension on June 9, 1978 and a new wiretap on June 21, 1978, are likewise tainted since they derive from the inadequate probable cause finding in the May wiretap. Accordingly, defendants move the suppression of all fruits of the three interceptions.

## I. FACTS

During the first half of 1978, the Baltimore District Office of the Drug Enforcement Administration ("DEA") together with the Baltimore City Police Department's Narcotic Division began investigating a large-scale narcotics organization in the Baltimore area. As the investigation developed, agents determined that much of the illegal narcotics trafficking was undertaken by the organization at 3608 Springdale Avenue in Baltimore, Maryland; at 909 North Calhoun Street in Baltimore, Maryland; and at 1629 East Madison Street in Baltimore, Maryland. They also discovered that the organization conducted some of its narcotics activities through the use of the telephones located on those and other premises. Informants supplied additional information revealing precise telephone numbers at each of those locations.. The C&P Telephone Company corroborated that information through subscriber records in its files.

As a result of the information obtained from informants and through surveillances conducted by the agents and others, on May 10, 1978, the Baltimore State's Attorney applied under Maryland's Courts and Judicial Proceedings Article for an Order authorizing interception of wire telephone communications to and from telephones located at 2704 West Baltimore Street and 3608 Springdale Avenue. Those telephones were alleged to have been subscribed to by James M. Delly and Barbara Green, and to have been assigned numbers (301) 233–4933 and (301) 547–5042, respectively. The State's Attorney's application was supported by a lengthy and detailed affidavit, provided by Baltimore City Police Detective Charles Smoot and by Maryland State Trooper Michael Callanan. The affidavit recited information received by the affiants from informants; it described the results of surveillances conducted by the affiants and other law enforcement personnel; and it provided an analysis of long distance telephone toll records obtained from the C&P Telephone Company for the two previously described telephone facilities. Based on this information, Judge Robert L. Karwacki of the Supreme Bench of Baltimore City entered an Order on May 10, 1978 granting the State's Attorney's application, describing in great detail the circumstances and conditions under which the ex parte Order was granted.

On June 9, 1978, as the first Order entered by Judge Karwacki was about to expire by its own terms, the State's Attorney applied to extend the authorization to intercept further telephone communications. The extension application again was supported by a detailed affidavit provided by Detective Smoot and Trooper Callanan. Their affidavit summarized the information supporting the original application and described the new information obtained from the initial electronic surveillance. Judge

Karwacki then signed an Order extending the previous authorization on the basis of the new application.

As a consequence of the interception of telephone communications between Barbara Moaney Green and Walter R. Webster, Norma Thompson and others, relating to possible violations of controlled substances laws, the State's Attorney applied for an authorization on June 21, 1978 to intercept communications to and from the telephone subscribed to by Norma Thompson, located at 1629 East Madison Street, and assigned telephone number (301) 276–0941. A lengthy affidavit in support of the application was again provided by Detective Smoot and DEA Agent William Miller. Based upon the affidavit and application, Judge Karwacki entered an appropriate Order granting the new authorization.

In July, 1978, the State's Attorney obtained search warrants on three separate occasions. Those warrants were issued upon the order of Maryland District Judge Edward Borgerding, and were executed by agents of the U.S. Drug Enforcement Administration and officers of the Baltimore City Police Department.

## II. CONSTITUTIONALITY

■ Defendant Ennels' challenge to the constitutionality of the state and federal wiretap statutes is entirely without merit, as this matter has been conclusively determined by both federal and state courts. *See, e. g., United States v. Bobo,* 477 F.2d 974, 981 (4th Cir. 1973), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1975); *United States v. Curreri,* 388 F.Supp. 607 (D.Md.1974); *United States v. Falcone,* 364 F.Supp. 877 (D.N.J.1973), *aff'd,*

500 F.2d 1401 (3rd Cir. 1974); *State v. Siegel,* 266 Md. 256, 271, 292 A.2d 86, 94 (1977). *See generally* Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U.Balt.L.Rev. 183, 191, 221 (1979) (federal law served as "guiding light" for Maryland provisions).

## III. PROBABLE CAUSE AND THE WIRETAP AUTHORIZATION

The federal wire interception statute requires that a wiretap application show probable cause in three different contexts. First, an individual must be shown to have committed or be about to commit one of several enumerated offenses (18 U.S.C. § 2516, which includes dealing in narcotics (18 U.S.C. § 2516(1)(e))). Second, there must be probable cause to believe that particular communications concerning that offense will be obtained by the wiretap. Third, there must be a belief that the premises where the interception will be made are being used in connection with the charged offense. 18 U.S.C. § 2518(3)(a), (b), and (d).[1] *United States v. Armocida,* 515 F.2d 29, 35 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). Having reviewed the affidavits submitted to Judge Karwacki in support of the three wiretaps and after applying the statutory standard of "probability" as distinct from a "*prima facie* showing," *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the Court concludes that the statutory probable cause requirements have been satisfied.

■ The affidavits submitted by Detective Smoot and Trooper Callanan must also satisfy the standards of *Spinelli v. United*

---

**1.** 18 U.S.C. § 2518(3)(a), (b), and (d) provides:

Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; . . .

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

*States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Under *Spinelli,* the affidavits must detail the " 'underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusion[s]," and the affidavits must demonstrate the basis of the informants' reliability. 393 U.S. at 413, 89 S.Ct. at 587.

■ Defendants have made several challenges to the sufficiency of the finding of probable cause; however, most of their observations are hypertechnical at best and trivial or inconsequential at worst. For example, defendants Ash and Henson allege inadequacy in the affidavit because there were two affiants whereas the affidavit refers only to "your affiant." Hence, they claim, the court was "left in the dark" as to who the real affiant was.[2] All three of the informants utilized by the affiants are challenged as to their credibility, sufficiency, and reliability. Informant # 1 is challenged primarily because although he was alleged to have been reliable for two years, and most recently in January, 1978, his latest assistance was over five months prior to the present affidavit. Similarly, defendants challenge the factual basis for the finding of probable cause by pointing to numerous examples of conduct alleged which is either unspecific or based purely upon conjecture and supposition. For example, defendants point to allegedly inadequate references in the affidavit to (1) the nature of prior information supplied by the informants, (2) the failure to define what a "major narcotics violator" was, (3) the failure to explain whether certain drug transactions of the informants were clandestine acts for themselves, thereby involving them in the conspiracy, or part of "controlled" police transactions during the investigation, and (4) the failure to show substantive criminal acts occurring at the 909 Club except through conclusory allegations resting on conjecture and supposition.

Defendants' counsel have picked over the affidavit as carefully as they possibly could. In isolating certain parts of it, however, they have endeavored to obscure the pattern of conduct which is readily apparent from the affidavit when considered as a whole. *United States v. Sklaroff,* 323 F.Supp. 296, 307 (D.C.Fla.1971). The hypertechnical reading of the affidavit urged by defendants is not warranted and has been rejected explicitly by at least one court:

> The short answer to much of the foregoing is that it calls for reading the affidavits in a hypertechnical manner. They should not be so read. *See United States v. Ventresca,* 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). A commonsense interpretation reveals that there was probable cause as to each of the wiretap applications. Indeed, one reaches the same conclusion even if the affidavits are read in the refined manner urged. We find, moreover, no fatal absence of reliability in the statements made by gamblers to the informants. These admissions against penal interest by confessed bookmakers concerning gambling operations of which they were a part were certainly entitled to weight. *See United States v. Harris,* 403 U.S. 573, 583–84, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (plurality opinion); *United States v. Bowser,* 532 F.2d 1318, 1321 (9th Cir. 1976); *United States v. Carmichael,* 489 F.2d 983, 986–87 (7th Cir. 1973) (en banc); Fed.R.Evid. 804(b)(3). Reasonably viewed, we find none of the statements to be "hopelessly vague", as alleged, nor insufficiently fresh.

*United States v. Santarpio,* 560 F.2d 448, 453 (1st Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 609, 154 L.Ed.2d 478 (1977). The *Santarpio* reasoning is especially instructive in this case insofar as the informants may have made declarations against their penal interests and the affidavits for the subsequent applications were not simply extensions of the first (although there was some duplication). Taking defendants' conten-

---

**2.** This statement is incorrect. Frequently the affidavit refers to "your affiant, Charles Smoot," thereby naming the particular affiant

making a particular assertion. Even without this specification in the affidavit, the Court finds no prejudice by the affidavit's wording.

tions at face value, the Court finds that they were insignificant and fall short of demonstrating a violation of 18 U.S.C. § 2518.

■ With particular reference to the uncertainty as to whether the informants' purchases of narcotics were "controlled" or not, one commentator has noted that:

> The informant may corroborate his own information, for example, by making a telephone call which the authorities monitor, or by making a "controlled buy" of narcotics, stolen property, or whatever. Alternatively, if the informant's information tends to incriminate the informant as well as the target, the informant's declaration against his own penal interest might be considered sufficient.

C. Fishman, Wiretapping and Eavesdropping 98 (1978). *See also United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Fina,* 405 F.Supp. 267, 271 (E.D.Pa.1975); *Bell v. State,* 22 Md.App. 496, 323 A.2d 677, *cert. denied,* 421 U.S. 1003, 95 S.Ct. 2405, 44 L.Ed.2d 672 (1974). Consequently, the informants' declaration against penal interest may be considered as providing additional credibility to the information contained in the affidavit.

■ Defendants' challenges to the reliability of the informants utilized also lack merit. Each informant was stated to have provided valuable information to the authorities within recent times. *See* Affidavit of May 10, 1978 at 2–9. *United States v. Schaefer,* 510 F.2d 1307, 1310 (8th Cir.), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1975, 44 L.Ed.2d 466 (1975). The affidavit recites in detail the observations of informants # 1 and # 2 in this case. These observations, and the pattern of suspicious conduct which they further evidence, were also corroborated by independent observations of the affiants as well as prior criminal records of the suspects which were submitted to Judge Karwacki to demonstrate a past history of narcotics violations. These records, even if alleged to be stale, would constitute harmless error (if indeed any error) since they were not crucial in making the probable

cause determination. *United States v. Best,* 363 F.Supp. 11, 18–19 & n. 8 (S.D.Ga. 1973). The informants' reliability on the basis of information furnished previously meets the *Spinelli* test, 393 U.S. 410, 89 S.Ct. 584, and the affidavit amply presents facts upon which a reasonable finding of probable cause could be made. *United States v. Becker,* 334 F.Supp. 546, 550 (S.D. N.Y.1971).

The standard of probable cause under 18 U.S.C. § 2510 *et seq.* is the same required for a regular search warrant. *United States v. Fury,* 554 F.2d 522, 530 (2d Cir. 1977), *cert. denied,* 436 U.S. 931, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1978); *United States v. Falcone,* 505 F.2d 478, 481 (3d Cir. 1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975); *United States v. Fina,* 405 F.Supp. 267, 270 (E.D.Pa.1975). The affidavits must be tested by the standards formulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (underlying circumstances must be shown so as to permit magistrate to assess affiant's assertion that undisclosed informant was creditable or his information reliable), *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (corroboration of a tip must be found to be as reliable as a tip which would pass *Aguilar* requirements when standing alone), and *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (declaration against penal interest by informant can be considered as a factor in assessing credibility). The informants' reliability was amply demonstrated, and, when their allegations are considered in conjunction with the affiants' own observations, the standard of probable cause has been met. The Court finds that Judge Karwacki's determination was based upon a " 'full and complete statement' of relevant facts supplied by law enforcement authorities." *United States v. Donovan,* 429 U.S. 413, 435, 97 S.Ct. 658, 672, 50 L.Ed.2d 652 (1977); 18 U.S.C. § 2518(1)(c).

## IV. EXHAUSTION OF OTHER INVESTIGATIVE TECHNIQUES

Prior to the use of the electronic surveillance, a showing must be made that "nor-

mal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). *See also* 18 U.S.C. § 2518(1)(c). *United States v. Spagnuolo,* 549 F.2d 705 (9th Cir. 1977). Defendants argue that such "normal investigative procedures" were not attempted and that, inter alia, there was no "affirmative showing that these witnesses [the informants] were offered benefits for their testimony and refused," that undercover infiltration should have been attempted rather than report that it was simply not "feasible," and that the statement alleging the ineffectiveness of search and seizure warrants was conclusory.

■ Referring to the requirements of sections 2518(1)(c) and (3)(c), *supra,* the Supreme Court noted in *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974), that these standards were "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." To make such a showing, one seeking a wiretap must do more than allege conclusions unsupported by specific facts, *Spagnuolo, supra,* 549 F.2d at 710; however, there is no requirement that investigators must have exhausted all conceivable alternatives to wiretaps:

These decisions permit us to make the following observations. To show that "other investigative procedures have been tried and failed" the affidavit must reveal that normal investigative techniques have been employed in a good faith effort to determine the identity. of those violating the law and to assemble sufficient evidence to justify their prosecution and that these efforts have failed to achieve their ends. The good faith effort need not have exhausted all possible uses of ordinary techniques. What is required is a showing that in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time.

*See also Haina and Strawbridge v. State,* 30 Md.App. 295, 352 A.2d 874 (1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

The affidavit clearly details the reasons why other traditional investigative techniques would be of no avail:

During this investigation, your Affiants have utilized three informants in gaining information relative to this organization run by family members. The members of the family only known by your Affiants included:

1. BARBARA MOANEY, alias CHILLIE

2. CLEVELAND C. WASHINGTON, JR., alias JACKIE (husband of CHILLIE)

3. ARNETTA DELLY ENNELS, alias ANITA and NITA (sister of CHILLIE)

4. MICHAEL DELLY, son of CHILLIE

5. WILLIAM DELLY, alias RED DELLY (brother of CHILLIE and NITA)

Your Affiants show in this Affidavit through the described reliable informants that the above family is involved in the distribution of large amounts of cocaine and heroin in Baltimore City and Metropolitan area and has an out of town source.

The informants have been asked to testify and have refused because each fears for his safety and the safety of his family. Without the testimony of these informants, it would be extremely difficult to prove the extent of the cocaine and heroin organization that BARBARA MOANEY, alias CHILLIE, described family members and all conspirators known and unknown are a part of.

There are no known witnesses who could testify concerning the violations described. Also infiltration into the described family by an undercover man does not appear to be feasible in this case. If it would be possible, it would only be at the lowest level of the operation. This

would not result in evidence being obtained regarding the principals in the family or the entire scope and extent of the operation.

It is doubtful that Search and Seizure Warrants, if obtained and executed, would result in a seizure of the entire cache of contraband. It is felt this would be ineffective based on your Affiants, Detective Charles Smoot and Trooper Michael Callanan's expertise in this area and the knowledge that major narcotic traffickers maintain several locations in which to conceal their contraband, related paraphernalia and records. The extremely quick action of narcotics traffickers would make it possible for them to direct the destruction or relocation of any contraband not recovered during the execution of these Search and Seizure Warrants.

It is felt by your Affiants that Search and Seizure Warrants for 2608 SPRINGDALE AVENUE, 530 ANCHOR DRIVE and 2704 W. BALTIMORE STREET might be successful in seizures of sizeable quantities of heroin and cocaine. Such seizure would not provide evidence in identifying the source and the means by which the narcotics is imported into the Baltimore area. Such seizures would also not provide the necessary information needed to identify those individuals apart from the above described subjects, who assist them in distributing the narcotics within the Baltimore area. Furthermore, Search and Seizure Warrants would not provide the necessary information to assist in locating all the cutting and stash houses used by this organization in their narcotics business. Only by electronic surveillance would your Affiants secure such particularized information and evidence that would assist your Affiants in convicting the above described subjects and also identifying and convicting those other individuals dealing with them in this ongoing conspiracy to violate the Controlled Dangerous Substance laws of the State of Maryland.

Any further attempts at surveillance would only reveal facts and information already known. These traditional investigative techniques also could jeopardize the investigation by alarming members of the organization, causing them to use more evasive means to avoid detection. They might possibly close the operation down or move to other locations using different tactics to conceal their operation.

Your Affiants state that in their opinion, based on their expertise in the field of narcotics and how it is transacted, that a 24-hour electronic surveillance is needed. During your Affiants' capacity as narcotic enforcement officers, many arrests have been made based on informants' information, investigation and electronic surveillances. Your Affiants' extensive experience has led us to the knowledge that narcotic violators operate all hours of the day. A prime time for these violators is when they think that narcotic officers are not working.

Also, it is imperative that this electronic surveillance be installed without the knowledge of the suspects for obvious reasons.

The persons involved would not make use of the telephones at 3608 SPRINGDALE AVENUE, 530 ANCHOR DRIVE and 2704 W. BALTIMORE STREET to conduct narcotic transactions.

In addition, as set forth earlier in this Affidavit, all the attached sheets regarding criminal records, Department of Motor Vehicle files as to vehicle registration, and Police Department photographs are to become part of this Affidavit and are affirmed to by those Affiants.

Your Affiants are aware of no other prior Application for Electronic Surveillance relative to the below described subjects, facilities and locations.

 Taken together, these factors provide more than enough support for the Court to conclude that Judge Karwacki properly found that the hypothetical alternative means were inadequate. *United States v. Agrusa*, 541 F.2d 690, 694 (8th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977); *United States v.*

*Lawson,* 545 F.2d 557, 563–64 (7th Cir. 1975); *United States v. Feldman,* 535 F.2d 1175, 1179–80 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976). Furthermore, it has been recognized that "the statutory burden on the government is not great in showing compliance with § 2518(3)(c). Accord *United States v. Bobo,* 477 F.2d 974, 982–83 (4th Cir. 1973); *United States v. Lanza,* 356 F.Supp. 27, 30 (M.D. Fla.1973)." *United States v. Armocida,* 515 F.2d 29, 38 (3d Cir. 1975). The *Armocida* court went on to add that "the government need not prove to a certainty that normal investigative techniques will not succeed, but rather need only show that such techniques 'reasonably appear to be unlikely to succeed if tried.'" *Id. See also United States v. Clerkley,* 556 F.2d 709, 714 (4th Cir. 1977), *cert. denied,* 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978); *United States v. Brick,* 502 F.2d 219, 224 (8th Cir. 1974); *United States v. Volpe,* 430 F.Supp. 931 (D.Conn.1977), *aff'd,* 578 F.2d 1372 (2d Cir. 1978).

"The showing of need made pursuant to § 2518(1)(c) is 'to be tested in a practical and commonsense fashion.' [1968] U.S. Code Cong. & Adm.News, pp. 2112, 2190." *Clerkley, supra,* 556 F.2d at 714. As with their challenges to probable cause, defendants seek to prevail here by fantasizing hypothetical "might have beens" which detract from the actual showing of need presented in the affidavit.

## V. PROBABLE CAUSE AND THE USE OF TELEPHONES

Defendants argue that there is no factual basis for the suggestion in the affidavit that a wiretap is the only way to conduct a meaningful investigation. This claim, however, amounts to little more than a restatement of what has been discussed already since it relates to the probable cause to believe that a crime is being committed, that in doing so a telephone is used, and that a wiretap is necessary to the continued investigation. Defendants contend that the justification provided by the affidavits with regard to the use of the telephone are patently contrived: any calls had to do with

*retail* sales of narcotics and not with any alleged wholesale sources. Citing *Zweibon v. Mitchell,* 170 U.S.App.D.C. 1, 76, 516 F.2d 594, 669 (1976), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), defendants conclude that a wiretap cannot be used to obtain strategic intelligence.

■ For the reasons explained in parts III and IV, *supra,* these arguments miss the mark altogether. Unlike the situation referred to in *Zweibon, supra,* the wiretap was not sought here as a general tool in order to uncover specific information. The electronic surveillance authorized here was to be used as a specific means of conducting an investigation of alleged narcotics transactions when other avenues of approaching the situation were unlikely to work. As the Fifth Circuit has stated, the purpose of the wiretap statute, and § 2518(1)(c) in particular, "is not to foreclose electronic surveillance until every other imaginable method of investigation had been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Pacheco,* 489 F.2d 554, 565 (5th Cir. 1974), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975). *See also United States v. Diadone,* 558 F.2d 775, 778 (5th Cir. 1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978). As such, all that is necessary to sustain a wiretap order is a finding of an appropriate "factual predicate" in the affidavit. *United States v. McCoy,* 539 F.2d 1050, 1055 (5th Cir. 1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977), *citing Armocida, supra,* 515 F.2d at 38. Both affiants—defendants can take their pick—have shown that they have adequate experience and training in this field of investigation. Their affidavit not only complies with § 2518(1)(c) but also specifically explains, according to details supplied by the informants, the extent to which telephones were necessary in conducting the investigation. The affidavit explained that while a search warrant might actually trap some of the alleged dealers and their goods, the sources would be left untouched. Consequently, the need

for use of telephone surveillance has been more than adequately shown.

The affiants, furthermore, do not appear to have overstated their need for telephonic surveillance. In admitting that a search warrant would have some utility but not as much as telephone surveillance, affiants have avoided making unnecessarily reckless statements:

> While the futility of normal procedures should be recited in detail, it is far wiser to concede that a particular investigative alternative is available but would not produce sufficient evidence, rather than to claim that that alternative is not available at all. Courts have criticized applications which misstated or overstated the difficulties; a deliberate or reckless misstatement may lead to suppression of the evidence obtained pursuant to a warrant based upon such an application.

C. Fishman, *supra,* at 124 (footnotes omitted). *See also United States v. Caruso,* 415 F.Supp. 847, 852 (S.D.N.Y.1976), *aff'd,* 553 F.2d 94 (2d Cir. 1977).

## VI. STALENESS

The defendants in *Ennels,* K–79–059, have argued that the wiretap affidavit, application, and Order are defective because some of the information contained in the original affidavit was "stale". *See* Memorandum accompanying defendants' motion to suppress at 10–11, 17–19, 24, 31, 38–39, and 41. The Supreme Court has held that with regard to information contained in a supporting warrant application, the affiant must show "facts so closely related to the time of issue of the warrant as to justify a finding of ·probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Sgro v. United States,* 287 U.S. 206, 210–11, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932). Staleness, however, cannot be determined by any rigid time rule but instead must depend on a case-by-case analysis.

"Together with the element of time we must consider the nature of the unlawful activity. . . . [W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir. 1972) (recent information was three weeks old and not stale when used in connection· with four-month-old investigation). Cases have found information not to be stale after three weeks, *United States v. Kirk,* 534 F.2d 1262, 1274 (8th Cir.), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1174, 51 L.Ed.2d 581 (1976); six weeks, *State v. Murphy,* 137 N.J.Super. 404, 349 A.2d 122, 131–132 (1975), *rev'd on other grounds,* 148 N.J.Super. 542, 372 A.2d 1315 (1977); and six months, *Washburn v. State,* 19 Md.App. 187, 193–95, 310 A.2d 176, 180–81 (1973). *See also Johnson v. State,* 14 Md.App. 721, 288 A.2d 622 (1972), *cert. denied,* 266 Md. 738 (1972); *cert. denied,* 409 U.S. 1039, 93 S.Ct. 517, 34 L.Ed.2d 487 (1973).

A leading case, *United States v. Harris,* 482 F.2d 1115, 1119 (3d Cir. 1973), makes clear that "staleness" of probable cause depends more on the nature of the unlawful activity alleged in the affidavit than the dates ·and times specified therein:

> Appellant's final contention on appeal is that the information upon which the search warrant issued was stale. The law is well founded that probable cause to justify the issuance of a search warrant must exist at the time the warrant is issued. ·*United States v. Boyd,* 422 F.2d 791 (6th Cir. 1970). The question of the staleness of probable cause depends more on the nature of the .unlawful activity alleged in the affidavit than the dates and times specified therein. As noted in *United States v. Johnson,* 461 F.2d 285 (10th Cir. 1972) at 287:
>
> > "Initially, it should be noted that the validity of probable cause cannot be qualified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause

dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."

The affidavit explained the nature of the continuing criminal conspiracy under investigation in this case, as well as the attendant complications which prevented state and federal law enforcement officials from concluding their investigation any earlier. In light of these circumstances, defendants' staleness claims lack merit.

## VII. MINIMIZATION

The federal wiretap statute requires that the use of any such interception be particularized so as to meet Fourth Amendment standards. According to section 2518(5), "[e]very order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days." This minimization standard is one of reasonableness to be adjudged on a case-by-case basis and does not forbid the interception of *all* non-pertinent calls. *Armocida, supra,* 515 F.2d at 42.

As a practical matter, wiretap orders "must be broad enough to allow interception of any statements concerning a specific pattern of crime." *United States v. Tortorello,* 480 F.2d 764, 780 (2d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973). In an alleged narcotics conspiracy, innocent conversations may be difficult to distinguish in light of the frequent use of code words to describe the contraband material and activities. The second affidavit which led to the second wiretap order of June 9, 1978 listed some thirty code words used during the first set of taped conversations. One court has commented that:

> Seemingly innocent conversations may be in code or underworld slang; conversations which begin with pleasantries may turn eventually to business matters; large conspiracies may involve many participants, some of whom may at first appear uninvolved. *United States v. Sisca, supra,* 361 F.Supp. [735] at 747. See generally also *United States v. LaGorga,* 336 F.Supp. 190, 196–97 (W.D.Pa.1971); *United States v. Mainello,* 345 F.Supp. 863, 874–77 (E.D.N.Y.1972). Cases adopting this view generally remit the defendant to civil remedies for the interception of innocent conversations. See, e. g., *United States v. Cox, supra,* 462 F.2d at 1302.

*United States v. Principie,* 531 F.2d 1132, 1140 (2d Cir. 1976), *cert. denied,* 430 U.S. 905, 97 S.Ct. 1173, 51 L.Ed.2d 581 (1977). The minimization problem, if any, is one which does not stem from any failure to particularize the evidence sought in accordance with section 2518(5).

The defendants in *Ennels, supra,* present a contradictory argument. At one point, they criticize the state authorities for having intercepted too many nonrelevant conversations by their failure to minimize, while later they suggest that exculpatory evidence was lost by the officials' failure to have recorded a significant portion of the intercepted conversations. Clearly defendants cannot have things both ways.

The central issue at a minimization hearing is "whether the procedures followed by the monitoring agents were reasonable in light of the facts and circumstances of the investigation." C. Fishman, *supra,* at 418. *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168, *reh. denied,* 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978). In *Scott,* the Supreme Court affirmed a ruling by the United States Court of Appeals for the District of Columbia Circuit in which the court had held that minimization compliance was to be assessed in light of "the totality of the monitoring agents' conduct," rather than by "[f]ragmenting the . . . inquiry" into an appraisal of whether each defendant's conversations were properly minimized. 164 U.S.App.D.C. 125, 128, 504 F.2d 194, 197

(1974). The Court further noted that proper minimization could not be automatically determined by looking at the percentage of pertinent to nonpertinent calls which were intercepted, 436 U.S. at 130, 98 S.Ct. 1717, and recognized that certain practical considerations such as the frequent inability to determine relevance prior to a call's termination mandated a flexible approach to the minimization question. *Id. See also United States v. LaGorga,* 336 F.Supp. 190, 196 (W.D.Pa.1971) (often impossible to determine relevance until termination of call). The *Scott* court analyzed the problem as follows:

We agree with the Court of Appeals that blind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer. Such percentages may provide assistance, but there are surely cases, such as the one at bar, where the percentage of nonpertinent calls is relatively high and yet their interception was still reasonable. The reasons for this may be many. Many of the nonpertinent calls may have been very short. Others may have been one-time only calls. Still other calls may have been ambiguous in nature or apparently involved guarded or coded language. In all these circumstances agents can hardly be expected to know that the calls are not pertinent prior to their termination.

In determining whether the agents properly minimized it is also important to consider the circumstances of the wiretap. For example, when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise. And it is possible that many more of the conversations will be permissibly interceptable because they will involve one or more of the co-conspirators. The type of use to which the telephone is normally put may also have some bearing on the extent of minimization required. For example, if the agents are permitted to tap a public telephone because one individual is thought to be placing bets over the phone, substantial doubts as to minimization may arise if the agents listen to every call which goes out over that phone regardless of who places the call. On the other hand, if the phone is located in the residence of a person who is thought to be the head of a major drug ring, a contrary conclusion may be indicated.

436 U.S. at 140, 98 S.Ct. at 1724–25.

■ The government contends that the interception and monitoring was conducted at all times in good faith, and that even when the minimization requirement may not have been satisfied, suppression of pertinent calls is not mandated. *United States v. Principie,* 531 F.2d 1132 (2d Cir. 1976); *United States ·v. Leta,* 332 F.Supp. 1357 (N.D.Pa.1971); *United States v. Askins,* 351 F.Supp. 408, 413 (D.Md.1972); *United States v. Curreri,* 388 F.Supp. 607 (D.Md. 1974). As the government correctly contends the better solution is to suppress those conversations which were improperly seized. *United States v. Cox,* 462 F.2d 1293 (8th Cir. 1972), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2633, 41 L.Ed.2d 223 (1974). Although defendants contend that failure to suppress *all* the seized conversations will only create incentives to undermine minimization altogether, thereby encouraging general electronic searches, the Court cannot accept this contention. Because of the ongoing nature of the crimes alleged in this case, minimization could not have been conducted with the precision which defendants' position would require. Where there is evidence of general bad faith by those conducting the telephone interception a more stringent approach might be necessary. The proper standard of review is "an objective assessment of an officer's action in light of the facts and circumstances then known to him." *Scott, supra,* 436 U.S. at 137, 98 S.Ct. at 1723. There being no evidence that the officers conducting the interception failed to comply with the general minimization requirements, this Court will not grant defendants' request that all intercepted conversations be suppressed.

## VIII. USE OF HEARSAY

In their motion to suppress, Defendants Ash and Henson point to the use of double and triple hearsay in the affidavit. Use of hearsay does not alone render the affidavit defective. "Hearsay, even double or triple hearsay, may be utilized as long as the sources of the information are given and are credible." C. Fishman, *supra*, at 95. *United States v. Di Muro*, 540 F.2d 503, 510 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Fiorella*, 468 F.2d 688, 691 (2d Cir. 1972); *cert. denied*, 417 U.S. 917, 94 S.Ct. 2622, 41 L.Ed.2d 222 (1974), *reh. denied*, 419 U.S. 885, 95 S.Ct. 156, 42 L.Ed.2d 128 (1974); *United States v. Kleve*, 465 F.2d 187 (8th Cir. 1972).

## IX. EXTENSION OF THE ORIGINAL AFFIDAVIT

Defendants premise their suppression motion upon a violation of the Maryland wiretap provisions, Md.Cts. & Judic. Proc.Code Ann. §§ 10–401 *et seq.*, and in particular § 10–408(a)(6) which relates to extensions and requires that

> Where the application is for the extension of an order, [there be] a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain the results.

Results of the subsequent wiretap authorized show that in each case there was both an extension of a previous tap with regard to certain individuals plus the inclusion of additional names obtained from the initial interception. The subsequent affidavits comply in all respects with the requirements of § 10–408(a). Under the federal statute, the authorization procedure for securing a renewal of a wiretap order is similar to the initial requirements, *United States v. Bynum*, 513 F.2d 533, 535 (2d Cir.), *cert. denied*, 423 U.S. 952, 96 S.Ct. 357, 46 L.Ed.2d 277 (1975), and conversations intercepted during the first tap can provide probable cause for a renewal. *United States v. Fury*, 554 F.2d 522, 531 (2d Cir. 1977), *cert. denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). The conversations presented in both the second and third affidavits provide the "factual predicate" for renewing and extending the initial wiretap. Contrary to defendants' claims, the subsequent affidavits showed the existence of "present probable cause [required] for the continuance of the eavesdrop." *Berger v. New York,* 388 U.S. 41, 59, 87 S.Ct. 1873, 1884, 18 L.Ed.2d 1040 (1967).

## X. EVIDENCE SEIZED AS A RESULT OF SEARCH WARRANTS

Defendants argue that the search warrants executed in this case were the illegal product of the unlawfully authorized wiretap and that any evidence obtained should consequently be suppressed. In light of the Court's finding that the wiretaps were properly authorized, defendants' motion to suppress evidence obtained from the searches must also be denied.

## XI. JOINT PARTICIPATION

At the suppression hearing, defense counsel raised for the first time a new challenge not previously included in the memoranda accompanying the suppression motion. Counsel alleged that even though the electronic surveillance was ultimately used as part of a joint state-federal narcotics investigation, federal officials were obligated nonetheless to seek and obtain proper authorization from the Attorney General of the United States before undertaking the surveillance. It was alleged that federal agents, having failed to obtain such authorization from the Justice Department, endeavored to rely on the state-authorized wiretap to obtain the necessary surveillance for which federal authorization had not been obtained. Consequently, defense counsel concluded that the joint state-federal wiretap created a "silver platter" situation in which federal agents circumvented federal requirements by accomplishing indirectly through the state-authorized wiretap what they were barred from doing directly by federal requirements.

At the hearing, the government proffered that in March or April of 1978, DEA Special Agent William Miller and Assistant U. S.

**600**

Attorney Neal Janey sought approval for a wire intercept pursuant to 18 U.S.C. § 2516 et seq. About a week later, Agent Miller informed Mr. Janey that state authorities were also seeking a wiretap on the same telephone number. Upon learning of this situation, the Justice Department's Criminal Section decided not to recommend approval of the intercept because of the probability that the Baltimore City Police Department would obtain a state-authorized wiretap. As a result, Mr. Janey withdrew his request for a federally approved wire intercept under Title III.

In light of these facts plus the fairly liberal disclosure provisions of 18 U.S.C. § 2517(1), the Court finds the joint state-federal intercept to have been lawfully conducted in all respects. Section 2517(1) provides for disclosure by one law enforcement officer to another "to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." Senate Report 1097, 90th Cong., 2d Sess. (1968), 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2195–96, indicated that the purpose of section 2517(1) was "to authorize the exchange of eavesdropping information among law enforcement personnel generally, and between state and federal officials particularly." J. Carr, The Law of Electronic Surveillance § 7.04[1], at 433 (1977). In the words of Senate Report 1097, section 2517(1) was to promote "close Federal, State, and local cooperation in the administration of justice." S.Rep. No. 1097, supra, at 2188. See also C. Fishman, supra, § 47, at 74. Carr has also noted that such joint participation can extend to the establishment of probable cause and the development of witnesses. J. Carr, supra, § 7.04[1][a], at 434.

These conclusions have been reinforced by cases which have upheld disclosures from federal to state officers, United States v. King, 335 F.Supp. 523, 547 (S.D.Cal.1971), modified, 478 F.2d 494 (9th Cir.), cert. denied, 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 94 (1973); United States v. Canon, 404 F.Supp. 841, 848–49 (N.D.Ala.1975); and from state to federal officers, United States v. Manfredi, 488 F.2d 588, 601 (2d Cir. 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); United States v. Forlano, 358 F.Supp. 56, 59 (S.D.N.Y.1973). See also United States v. Hall, 543 F.2d 1229, 1232–33 (9th Cir. 1976).

Given this substantial federal authority and the absence of any improper activities by state and federal authorities in seeking the authorization and conducting the wire intercept, the Court concludes that defendants' objections are without merit.

Following a hearing on April 25 and April 26, 1979, the Court informed counsel of the conclusions set forth herein, and the selection of the jury and the trial began on April 26, 1979.

This Memorandum Opinion and Order is issued so that counsel will be fully informed of the Court's ruling and the reasons therefor in the event there are any further proceedings relating to these indictments.

Accordingly, it is this 26th day of June, 1979, by the United States District Court for the District of Maryland, ORDERED:

That defendants' motions to suppress the conversations obtained by wire interceptions be, and the same are, hereby DENIED.