UNITED STATES of America

v.

**Mardy Ralph ERRERA, et al.**

**Crim. No. Y–85–013.**

United States District Court, D. Maryland.

July 24, 1985.

J. Frederick Motz, U.S. Atty., Baltimore, Md. and Barbara S. Sale, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Plato Cacheris, Larry S. Gondelman, Washington, D.C., Eugene Zoglio, Bowie, Md., and William H. Murphy, Jr., Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Defendants Mardy Ralph Errera, Anthony LaRusso, Willie Gore, Arturo Palacious, and James (Jamie) B. Palacious have been indicted for conspiracy to distribute cocaine, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendant Errera filed a motion to suppress recorded oral conversations and tangible evidence and defendant LaRusso filed motions to suppress evidence secured by search and seizure and oral and written statements. All defendants have moved to adopt all other defense motions. Following an evidentiary hearing on the merits of defendants' motions, and after a review of the memoranda filed, defendants' motions to suppress will be denied.

On November 19, 1984, Judge Bryan of the United States District Court for the Eastern District of Virginia authorized the electronic interception of oral communications transmitted over telephone lines serving defendant LaRusso's residence (Virginia wiretap). The court gave its authorization after having found probable cause to believe that the defendant was using his home telephone in connection with the distribution of cocaine and that conversations relating to this offense would be intercepted. (Government's Exhibit 1, Order Authorizing Interception of Wire Communications). The court relied on a forty-eight page affidavit of Special Agent Joseph Sciacca of the Federal Bureau of Investigation ("FBI"). (Government's Exhibit 1, Affidavit).

On December 14, 1984, Judge Miller of this Court found probable cause to believe that defendant Errera's home telephone was being used in connection with the distribution of cocaine and that conversations revealing this fact would be intercepted and authorized a wiretap of defendant Errera's home telephone, (Maryland wiretap), (Government's Exhibit 2, Order), on the basis of a thirty-two page affidavit of Special Agent Cameron Craig. (*Id.*, Affidavit). The government's application for electronic interception and the supporting affidavit which it incorporates by reference were based in large part on conversations intercepted pursuant to the wiretap placed on defendant LaRusso's residential phone. (*Id.*, Application and Affidavit).

The record reveals that soon after the wiretap on defendant Errera's phone was commenced, federal agents learned from many "veiled" phone conversations among the various defendants that defendant Errera was expecting a shipment of cocaine.

Testimony and other evidence in the record indicates that on or about December 20, 1984, Errera and his co-defendant Willie Gore drove to the Delta Cargo Terminal at the Baltimore-Washington International ("BWI") Airport where Gore picked up a pallet loaded with cardboard cases. The two defendants then returned separately to the Errera residence. Telephone activity upon Errera's return home indicated that he had received cocaine and was packaging it for distribution. Federal agents hastily applied for a warrant to search the Errera residence and Magistrate Clarence Goetz of this Court authorized the warrant based upon an oral affidavit which relied extensively on the contents of intercepted phone conversations and the observations of surveillance officers.

Defendant LaRusso visited the Errera house just prior to the execution of the search warrant and his car was stopped shortly after leaving the Errera residence. Approximately two pounds of cocaine were seized from a brown bag that agents contend was half concealed under the front seat of his car. Defendant Palacious also appeared at the Errera residence before the search warrant was executed; he was stopped after leaving the house and a small amount of cocaine was seized from him. Thereafter, agents executed the search warrant and a search of the Errera home revealed a triple beam balancing scale, packaging materials, and two kilos of purportedly high quality cocaine.

## I. ISSUES RAISED BY DEFENDANTS' MOTIONS TO SUPPRESS

Defendants offer a number of challenges to the evidence in this case. Their contentions may be briefly summarized as follows: (1) the initial order authorizing the interception of wire communications at the residence of defendant LaRusso (Virginia wiretap) was illegal because there was no probable cause to believe that communications concerning and involving cocaine trafficking would be transmitted over LaRusso's residential phone; (2) the failure to establish probable cause requires that the communications obtained pursuant to that authorization and all derivative evidence obtained therefrom be suppressed; (3) all evidence obtained from the wiretap of defendant Errera's phone (Maryland wiretap) and from the subsequent search of his residence should be suppressed as "tainted fruits" of the illegal Virginia wiretap because the order authorizing the Maryland wiretap was issued in reliance on information obtained from the Virginia wiretap and the authorization to search the Errera residence was based in large part upon information gleaned from both wiretaps; (4) the Maryland wiretap order was also defective because there was not probable cause to believe that communications relating to cocaine trafficking would be transmitted over Errera' home phone; (5) the application for a search warrant of the Errera residence was not supported by probable cause established by information untainted by the unlawful wiretaps; and (6) there was not probable cause nor were there exigent circumstances which justified the stop and search of the LaRusso vehicle.

## II. APPLICABLE LAW

 Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2520, is the statutory scheme which governs the authorization of electronic and wiretap surveillance. *Gelbard v. United States,* 408 U.S. 41, 46, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972). Wiretap and electronic surveillance activities also are subject to the Fourth Amendment, which requires that warrants be issued only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." *See Berger v. New York,* 388 U.S. 41, 54–55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967). Section 2518(1)(b) of Title III embodies the warrant clause requirement and mandates that an application for wiretap authorization set forth facts establishing probable cause. *See United States v. Talbert,* 706 F.2d 464, 467 (4th Cir.1983); *see also* J. Carr, *The Law of Electronic Surveillance,* at 168 (1978). Every application must include:

a full and complete statement of the facts and circumstances relied upon by

the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

18 U.S.C. § 2518(1)(b). In addition, the issuing judge must determine, on the basis of the facts submitted by the applicant that: (a) there is probable cause to believe that an individual is committing, has committed, or is about to commit one of several enumerated offenses which includes trafficking in narcotics; (b) there is probable cause to believe that particular conversations involving that offense will be obtained through a wiretap; (c) there is probable cause to believe that the telephone or place where the wire communications are to be intercepted is being used, or is about to be used in connection with the commission of the offense charged. 18 U.S.C. § 2518(3); *United States v. Webster*, 473 F.Supp. 586, 590 (D.Md.1979), *aff'd in part*, 639 F.2d 174 (4th Cir.1981), *cert. denied sub nom., Christian v. United States and Adams v. United States*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). A link between the individual, the telephone, and the offense must be established.

■ Applications for electronic surveillance orders, like search warrants, are to be read "in a common sense and realistic fashion." *United States v. Armocido*, 515 F.2d 29, 40 (3d Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). *Webster*, 473 F.Supp. at 591; *United States v. Santarpio*, 560 F.2d 448, 453 (1st Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977). Assessments concerning probable cause are to be made after the "totality of circumstances" test has been used to determine the adequacy of an application. *Cf. Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (applying the "totality of circum-

stances" test to applications for search warrants). If there is, under all the circumstances, a "fair probability that ... evidence of a crime will be found," authorization should be granted. *Id.*, at 238, 103 S.Ct. at 2332.

■ Where electronic surveillance has been authorized by a judicial officer, "the fact that the issuing judge found probable cause is itself a substantial factor tending to uphold the validity of the order so issued." *United States v. Becker*, 334 F.Supp. 546, 549 (S.D.N.Y.1971). The propriety and adequacy of the review given to the application by the issuing judge should be presumed. *See generally United States v. Lucido*, 373 F.Supp. 1142, 1146 (E.D.Mich.1974) (court will not assume that issuing judge did not make, or was not capable of making, a finding of probable cause based on the relevant data). This reasoning is consistent and dovetails with that of the Supreme Court in *United States v. Leon*, — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Court determined that the exclusionary rule does not require the suppression of evidence gathered in good faith on a facially valid warrant. *See, id.*, 104 S.Ct. at 3421.

■ Finally, the requirements of § 2518(3) are intended to implement and faciliate the Fourth Amendment requirement of probable cause to believe that the evidence sought is located in the place to be searched. *United States v. Green*, 634 F.2d 222, 225 (5th Cir.1981). Without such a showing, the authorization, and surveillance pursuant to it is invalid and the fruits of the surveillance may not be admitted at trial. *See United States v. Giordano*, 416 U.S. 505, 524–29, 94 S.Ct. 1820, 1831–33, 40 L.Ed.2d 341 (1974); *see also*, 18 U.S.C. § 2515, 2518(10)(a)(i) (provisions mandating the suppression of illegally obtained evidence in wiretap authorization statute).

III. ANALYSIS

■ Defendants contend that the wiretap application involving the telephone of defendant LaRusso (Virginia wiretap) was

insufficient to establish probable cause to believe that conversations concerning a cocaine conspiracy would be intercepted by a wiretap of that particular residential telephone. Defendants argue that the results of the FBI surveillance operations do not support the conclusion that LaRusso was conducting his alleged cocaine business over his home telephone. Defendants state that "in fact, the pattern of activity observed by the FBI indicates that the subjects of the surveillance conduct their affairs in person. The affidavit is replete with observations of personal meetings." (Memorandum in Support of the Motion to Suppress of Defendant Errera, at 6–7). Thus, defendants urge that Special Agent Sciacca's affidavit fails to provide a reasonable basis for concluding that the telephone communications to be intercepted would relate to the alleged crimes.

Defendants' arguments on this point are simply not persuasive in light of the overwhelming evidence in the record which substantiates the information cited by the government in its application for a wiretap order. The affidavit supporting the application itself makes reference to six phone calls made by a confidential government informant to LaRusso where drug purchases were discussed. One confidential informant met defendant LaRusso and purchased a quantity of cocaine directly from him following a cocaine related conversation in which LaRusso's home telephone was used. Moreover, FBI surveillance, pen registers, and two other confidential sources with proven records of reliability corroborated the observations of the first informant who purchased the cocaine from the defendant. The record also reveals that a second informant was offered cocaine by defendants LaRusso and Errera and that other sources furnished considerable information concerning the identity of LaRusso's cocaine customers and partners. The evidence further indicates that surveillance officers observed numerous meetings and transactions involving defendant LaRusso typical of those which take place in drug trafficking. Pen registers also showed there were numerous calls among the alleged co-conspirators during this time.

Taken as a whole and under the "totality of circumstances," the affidavit in support of the application for the Virginia wiretap warrant is sufficient to establish a reasonable belief that defendant LaRusso was using his home telephone to further a cocaine trafficking enterprise and that conversations relating to such an enterprise would in all probability be intercepted during a wiretap of defendant's phone.

Federal courts have upheld the validity of wiretap orders issued in reliance on affidavits which state that a suspect has conducted illegal business over the telephone (for which the wiretap order is sought). These wiretap orders have been properly issued where the affidavit accompanying the government's application is supported by a reliable informant whose testimony itself is corroborated by government surveillance and other evidence. *See, e.g., Becker,* 334 F.Supp. at 550–51; *United States v. Leon,* 534 F.2d 667 (6th Cir.1976). If a defendant is willing to conduct business over the telephone with one presumed customer on more than a single occasion, it is not unreasonable to assume that he will conduct business similarly with other customers, partners, or co-conspirators at other times.

 Defendant argues that even if the affidavit and application are sufficient to establish probable cause, the issuance of the Virginia wiretap order was nonetheless improper because of the government's participation in the creation of probable cause. (Errera Memorandum, at 8 (citing *United States v. Archer,* 486 F.2d 670 (2d Cir. 1973)). However, defendant's argument is unavailing and his reliance on *Archer* misplaced. Nothing in *Archer,* or any other relevant authority of which the Court is aware compels it to conclude that the government may not confirm a drug dealer's willingness to do business over the telephone by using confidential informants. *See Leon,* 534 F.2d at 667 (informant's assertions that he had placed bets with the defendant was proper basis for finding

probable cause upon which wiretap order was authorized); *United States v. Sellaro,* 514 F.2d 114 (8th Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1973) (recitals in affidavit supporting wiretap application noted that two informants had placed bets with co-defendants over the phone and were sufficient to establish probable cause). The Court of Appeals in *Archer* simply disapproved of the "sting" tactics in which government agents committed perjury and gave false declarations. It found these tactics to be "substantially more offensive than the common cases where government agents induce the sale of narcotics in order to make drug arrests" but it reversed defendant's conviction on other grounds. *Archer,* 486 F.2d at 677. If the government may develop probable cause to assert a suspect by inducing a narcotics sale under circumstances which do not amount to entrapment, certainly it can rely on probable cause established by similar means when applying for an electronic surveillance order.

■ Finally, defendant contends that the information in the application for the Virginia wiretap order was stale and therefore insufficient to establish probable cause. This argument is equally without merit. The application for a wiretap was approved by the court on November 9, 1984, and a confidential informant engaged in a drug related conversation with LaRusso using one of the telephones at his home as recently as October 29th. Additionally, there was pen register activity showing a high volume of calls to suspected criminal associates of LaRusso at the end of October, 1984. Recognizing that several weeks may be required to process an application for electronic surveillance, the information supporting the wiretap order was as current as possible and sufficiently fresh to establish probable cause. In *United States v. Fina,* 405 F.Supp. 267 (E.D.Pa.1975), the district court determined that although the information upon which the government relied was three weeks old, it was proper to find that probable cause existed at the time the wiretap order was issued because there necessarily must be a delay between the time the information is gathered to support

the application for a wiretap and the time the court actually issues the wiretap order. *Id.,* at 274–75.

Considering all the relevant factors and applicable standards, it is apparent that there was probable cause to believe that defendant LaRusso and his associates would engage in conversations of a drug related nature over his home telephone. The Court also finds that the information supporting the government's application was not stale. Therefore, defendant Errera's contention that the evidence obtained by virtue of the wiretap on his home (Maryland wiretap) should be suppressed because of its reliance in large part on the information intercepted in the Virginia wiretap provides no basis for the suppression of any evidence. The Virginia wiretap was valid and it follows that the Maryland wiretap also was valid. *See United States v. Webster,* 639 F.2d at 180.

■ The application and supporting affidavit for the Maryland wiretap of the Errera residence incorporated information from the Virginia wiretap which directly implicated defendant Errera in the alleged cocaine trafficking enterprise and was sufficient to establish probable cause for a wiretap order. During the course of the intercept on LaRusso's telephone, the record reveals that LaRusso engaged in numerous conversations with Errera apparently concerning cocaine. For example, on November 16, 1984, LaRusso asked Errera if he had "a couple of old cars ... to sell." Later the same day, Errera told LaRusso that "that car is 700," and indicated that the figure "700" did not refer to money. He also added that he did not have two cars. LaRusso apparently did not understand the meaning of 700 so Errera arranged to go to a pay phone to explain it to him in straightforward language. FBI agents monitoring the conversation understood that Errera did not have two pounds of cocaine, but only 700 grams.

■ Having established that neither Errera nor LaRusso were currently in the car business, and in the context of all the evidence previously obtained, the monitoring agents reasonably concluded that Err-

era and LaRusso were discussing quantities of cocaine. It is well established that in the context of electronic surveillance, an otherwise ambiguous converstation may serve as a predicate for probable cause so long as it is reasonably interpreted. *E.g., U.S. v. Fury,* 554 F.2d 522, 530–31 (2d Cir.), *cert. denied sub nom, Quinn v. U.S.,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *U.S. v. Aloi,* 449 F.Supp. 698, 736 (E.D.N.Y.1977). In the context of LaRusso's and Errera's conversations and transactions, it is reasonable to conclude that the two men were discussing cocaine and thus there was probable cause to support Judge Miller's decision to issue the wiretap order.

Defendants also challenge the warrant issued to search the Errera home on the day cocaine was brought to the house and the warrantless search of defendant LaRusso's car after he left the Errera residence. These objections are without merit and will not provide a basis for granting defendants' motion to suppress evidence.

The oral affidavit presented to Magistrate Goetz states that cocaine was being "cut," concealed, and packaged for distribution at Errera's home. The affidavit recites numerous facts which indicate that Errera was expecting a shipment of cocaine. These conversations with his co-defendants involved talk of Errera's expectations for a "white Christmas" and of his failure to complete his "Christmas shopping." After Errera and defendant Gore were observed picking up a large pallet of cardboard boxes at the Delta cargo terminal at BWI the next day, then off loading the boxes at Errera's house, and telling callers (one of them LaRusso) that the "Christmas packages" had been picked up, agents applied for a search warrant of Errera's residence. Additionally, agents listened to Errera tell callers that he was wrapping the "packages," and that LaRusso could "play Santa Claus." LaRusso later called back to say that he was coming over.

■■■■■ The Court concludes that these communications were reasonably interpreted under the totality of circumstances, by agents expert in the field of narcotics investigation and that these communications were sufficient to establish probable cause for the issuance of a search warrant of the Errera house. *See Massachusetts v. Uptown,* 466 U.S. 727, 104 S.Ct. 2085, 2086, 80 L.Ed.2d 721 (1984). Furthermore, a deficiency in the warrant would not require exclusion of the evidence seized here as it was gathered in good faith reliance on a facially valid warrant. *Leon,* 104 S.Ct. at 3421.

Defendant LaRusso also challenges the stop and search of his vehicle after he left the Errera residence. Agents discovered and seized approximately two pounds of cocaine during the search and LaRusso argues that the search was conducted without probable cause and that the evidence seized from this improper search should be suppressed.

■■■■■ However, the search of LaRusso's vehicle was based in this instance upon probable cause as required by *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982), because the information obtained by agents from the Virginia and Maryland wiretaps and surveillance indicated that there was a high probability that defendant's vehicle would be transporting contraband after leaving the Errera residence. Defendant LaRusso's automobile was searched upon "a belief reasonably arising out of circumstances known to the seizing officer that [it] contain[ed] that which by law is subject to seizure." *Carroll v. United States,* 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925)." One of the circumstances in which the Constitution does not require a search warrant is when police stop an automobile on the street or highway because they have probable cause to believe it contains contraband or evidence of a crime." *Arkansas v. Sanders,* 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). The mobility of the LaRusso vehicle created an exigent circumstance and a virtual certainty that the evidence inside the vehicle would be carried away and therefore made any efforts to obtain a warrant before stopping and searching the vehicle impossible.

Defendants argue that obtaining a search warrant was not impractical in this case because agents could have obtained an anticipatory search warrant for all of the vehicles at defendant LaRusso's disposal when they first learned that he intended to visit the Errera residence. This argument is not persuasive because it is unlikely that such a broad and sweeping application would have met the specificity requirements for obtaining a search warrant. Moreover, agents would not have had probable cause to obtain a search warrant for any vehicle until *after* it left the Errera resident. *See State v. Bell,* 195 N.J.Super. 49, 477 A.2d 1272 (1984) (police who had probable cause to believe that occupants of a car would possess drugs upon their return to Elizabeth, New Jersey from New York City had no present probable cause until the car was sighted driving back to New York City and therefore an anticipatory warrant was not required before police conducted search of the car). Therefore, defendant LaRusso's motion to suppress evidence will be denied.

For the foregoing reasons, the conversations and tangible evidence derived from the Virginia and Maryland electronic surveillances, the search of the Errera residence, and the search of LaRusso's vehicle were lawfully seized and defendants' motions to suppress will be denied.